Grace Herndon **PATTEN** et al., Petitioners,

v.

Nettie Odum **RODGERS** et vir., et al., Respondents.

No. B–508.

Supreme Court of Texas.

June 26, 1968.

Spruiell, Lowry, Potter, Lasater & Guinn, Will A. Knight, Tyler, for petitioners.

George Glenn Huffman, Marshall, for respondents.

POPE, Justice.

Nettie Odum Rodgers and her husband, joined by other members of the Odum family, filed this suit in trespass to try title against the record owners and asserted title by limitations to two tracts of land in Harrison County. A jury found that plaintiffs proved limitations under the ten-year statute, and the trial court rendered judgment on the verdict. The court of civil appeals affirmed the judgment. 417 S.W.2d 837. This court granted defendants' application for writ of error for a determination of two points: (1) Did W. E. Odum, the adverse claimant under whom plaintiffs hold, as a matter of law, recognize the superior title of the record owner in such a manner and time as to interrupt the continuity of the ten-year period? (2) Did the trial court err in submitting a single special issue which inquired about the adverse possession as to both tracts of land? In our opinion the adverse claimant did not recognize the title of the record owner as a matter of law, but the trial court should have submitted separate issues for each of the two tracts. We reverse the judgments of the courts below and remand the cause to the trial court.

Grace Herndon Patten and the other defendants are the record owners of the lands in question. On January 5, 1944, W. E. Odum received a deed to the two tracts in question from H. C. Alexander, a stranger to the record title. The deed described a 320-acre tract and a 44-acre tract out of the S. D. Rainey Survey. The smaller tract was northwest of the 320–acre tract and was separated from it by Little Cypress Bayou, a small water course.

Odum, after obtaining the deed from Alexander, surveyed the land, moved upon it with his family, and commenced using it for pasturing his cattle. He cleared a few acres of the 320-acre tract and planted it in vegetables. He fenced the east, west, and south sides of the larger tract, but left the north side unfenced because the Bayou formed a sufficient natural barrier to confine his stock. W. E. Odum's son, Ernest, ran cattle on the smaller tract. In the trial court, there was a factual dispute about the fencing of the 44-acre tract. The Odums contended it was fenced. There was some evidence that it was unfenced but surrounded by lands of a tenant to whom the Odums leased the lands at times.

The trial court submitted only one issue to the jury. The issue, the instructions which accompanied it, and the answer of the jury were:

"Do you find from a preponderance of the evidence that the plaintiffs and those under whom they claim, either personally or through tenants, or partly in person and partly through tenants, have had peaceable and adverse possession of the land involved in this suit, cultivating, using and enjoying the same for any consecutive period of ten (10) years or longer between January 5th, 1944 and the filing of this suit on the 11th day of September, 1962? Answer 'Yes' or 'No'.

"ANSWER: 'Yes'

"In connection with the foregoing Special Issue, you are instructed that 'Peaceable Possession' means such possession as is continuous and not interrupted by adverse suit to recover the land.

"In connection with the foregoing Special Issue, you are instructed that 'Adverse Possession' means actual and visible appropriation of the land commenced and continued under a claim of right, inconsistent with and hostile to the claim of another.

"In connection with the foregoing, you are instructed that 'Hostile' means a holding of the land with intent to claim it as his own against the record owners thereof."

Defendants, petitioners here, urge that the Odum family's claim of adverse possession was defeated by undisputed evidence which showed that W. E. Odum recognized the title of Carey M. Abney and William F. Young who, they assert, were cotenants of the record owners. The evidence of recognition upon which defendants rely is that the record owners employed Abney and Young in 1921 as their attorneys to institute suit against certain trespassers upon the two tracts of land. The owners executed and acknowledged a power of attorney which authorized the attorneys to take appropriate action to recover the described lands from any trespassers. The attorneys promptly recorded the power of attorney which provided in part:

"In consideration of their services we do hereby convey unto said Abney and Young, an undivided one-half (½) interest of whatever interest they may recover for us in the land herein described."

Defendants argue that in 1957 Odum and Young exchanged deeds. Young quitclaimed to Odum all of his right and interest in the surface to both tracts of land. Odum quitclaimed to Young an undivided 45½ acre interest in the oil, gas and minerals in both tracts. The latter deed contained this recital:

"The said William F. Young has this day executed and delivered to me, a Quit-Claim Deed covering his interest in 45½ acres in said lands, save and except the oil, gas and other minerals in and under and that may hereafter be produced from said lands conveying to me thereby, his interest in the surface of said surveys which are in my possession *but which I have not held adversely to him.*" (Emphasis added.)

There is also in evidence a 1950 deed by which Odum quitclaimed to Abney the east 60⅔ acres out of the 320-acre tract, but the deed recited it was upon a cash consideration paid by Abney. In the course of the trial Odum made these statements on cross-examination:

"Q. Mr. Odum, you stated in that deed that you gave to Mr. Young, you heard me read the statement to the effect that you had not been holding that land adversely to Mr. Young, didn't you?

A. That's right.

Q. All right. Then you recognized Mr. Young's interest in the property, did you not?

A. At that time I did.

*   *   *   *   *   *

Q. All right. Have you ever recognized anybody else's interest in the property besides Mr. Abney and Mr. Young?

A. No sir, that was all.

Q. But you did recognize their interests?

A. That's right, because it was listed as Abney and Young.

Q. All right. And you didn't claim the property against them?

A. No, not against them."

Abney and Young are not parties to this suit, are not cotenants of the defendants, and are not record owners of the property. The defendants assume that the 1921 power of attorney was a present conveyance which made Abney and Young cotenants, but it conveyed no interest in the land. The power of attorney purported to convey an undivided interest of "whatever interest they may recover. * * *" It was a contract by the record owners to convey an interest in the lands upon performance by Abney and Young under the power of attorney. The attorneys had a mere equitable right under the unperformed power of attorney. Performance would have vested the attorneys with an equitable title, but until they performed they did not own the land. Johnson v. Wood, 138 Tex. 106, 157 S.W.2d 146 (1941); Hazlett v. Harwood, 80 Tex. 508, 16 S.W. 310 (1891). There was no proof that they ever performed and recovered the lands against the trespassers. An exhibit in the record shows that Abney and Young

instituted suit and obtained a judgment in 1922 for the 320-acre tract in favor of the record owners against one defendant. The smaller tract was not brought into that action. Whether the named defendant in that 1922 action was the only trespasser or even the main one of many trespassers does not appear. From the record it appears further that Abney and Young did not ever assert that they performed in such a manner as entitled them to one-half of the land. They were not parties to the 1922 action, nor did the judgment award them any interest in the property. Although forty-one years elapsed between the date of the power of attorney and the institution of this present suit, there is no evidence that the record owners ever made a conveyance to the attorneys by reason of their performance of their contract.

A power of attorney may contain words which effect a present conveyance as in Garner v. Boyle, 97 Tex. 460, 79 S.W. 1066 (1904), and Tayler v. Taul, 88 Tex. 665, 32 S.W. 866 (1895), but the power of attorney to Abney and Young did not operate as a conveyance for the reasons stated in Browne v. King, 111 Tex. 330, 235 S.W. 522 (1922). That case was an action by Browne, an attorney, to recover lands under a similar power of attorney which provided that an attorney was granted one-half of the amount of land "so recovered":

> "The instrument executed by the Acebos and given Browne was not effective on delivery as a deed to one-half of the land. It conveyed no present interest. His interest was to be a future one. It was to be in the land when 'recovered,' and then only in consideration of the performance of his part of the contract. Except upon such performance he was to have no interest. Further action on his part was necessary—his recovery of the land for the grantors by the prosecution of a successful suit or amicable partition. There was no grant to him of an interest in the land under its existing status. The grant was an interest in the land 'so recovered,' revealing very plainly that his interest was to be effective only after the successful exercise of his agency. The necessity for future action on Browne's part as the condition for the vestiture of any interest in his favor made the contract purely executory. Hazlett v. Harwood, 80 Tex. 508, 16 S. W. 310; Tayler v. Taul, 88 Tex. 665, 32 S.W. 866.

> "Browne, himself, recognized that the instrument conveyed to him no present interest, for the suit which he caused to be instituted for the recovery of the land was alone in the name of the Acebos.

\* \* \* \* \* \*

■ The proof showed that Abney and Young owned and claimed no more than an equitable right which had not matured into an equitable title. The court instructed the jury, without any objection by the defendants, that the term "hostile" meant "the holding of the land with intent to claim it as his own against the record owners." We conclude that the evidence does not show, as a matter of law, as defendants urge, that the Odums recognized defendants' superior title. See Craig v. Cartwright, 65 Tex. 413, 421, 424 (1886); Moran v. Wallace, 171 S.W.2d 149 (Tex.Civ.App.1943, writ ref. w. o. m.); Carter v. Webb, 239 S.W. 630, 632 (Tex.Civ.App.1922, no writ); Glover v. Pfeuffer, 163 S.W. 984, 987 (Tex.Civ.App. 1914, writ ref.); Converse v. Ringer, 6 Tex.Civ.App. 51, 24 S.W. 705 (1894, no writ); Longley v. Warren, 11 Tex.Civ.App. 269, 33 S.W. 304 (1895, writ ref.).

■ We conclude, however, that the trial court erred in overruling defendants' objections that the special issue was duplicitous in inquiring about adverse possession of both tracts of land in a single issue. The facts about the nature and extent of the claim asserted to the 320-acre tract differed from those concerning the 44-acre tract. There was evidence that W. E. Odum fenced, farmed, and ran cattle on the 320-acre tract and was the one who continuously asserted the adverse claim from 1944

to 1962. There was evidence that his son, Ernest, used the 44-acre tract for a dairy from 1944 to 1955. Evidence of the nature of the use and occupancy was different for each of the tracts. The evidence about the fencing of the two tracts was different, and different witnesses testified about the two tracts. The nature of the use after 1955 when Ernest went to California was disputed. A jury may well have determined that limitation title was perfected as to one tract, but not as to the other. The court should have submitted issues which separately inquired about the two tracts. Rules 277, 279, Tex.Rules of Civil Procedure; 3 McDonald, Texas Civil Practice, § 12.18 (1950).

The judgments of the courts below are reversed and the cause is remanded to the trial court.