COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



MARGARET BRAUDRICK and LENA
FIERRO,


 Appellants,


v.


WAL-MART STORES, INC., d/b/a
SAM'S WHOLESALE CLUB, and
EMERSON CONSTRUCTION
COMPANY, INC.,


 Appellees.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00400-CV
 


Appeal from the


120th District Court 


of El Paso County, Texas 


(TC#2003-3704) 



O P I N I O N


 Appellants, Margaret Braudrick and Lena Fierro, appeal a jury finding that Appellees, Wal-Mart Stores, Inc. d/b/a Sam's Wholesale Club ("Sam's Club") (1) and Emerson Construction Company,
Inc. ("Emerson"), were not negligent with regard to injuries suffered by Appellants. We affirm the
judgment of the trial court.

I. BACKGROUND


 In June of 2002, Wal-Mart Stores, Inc. entered into a construction contract with Emerson for
the remodeling and construction of certain portions of adjacent Wal-Mart and Sam's Club stores
located in El Paso, Texas. The construction involved adding additional space to the Sam's Club
store, as well as repaving and landscaping the parking lot. Emerson served as the general contractor
on the project. Section 9G of the construction contract provided that "Wal-Mart will take
'Possession' of new constructed areas upon completion of those areas." The contract also provided
that Emerson was "responsible for traffic control and necessary barricades that would facilitate
customer traffic and ensure customer safety." Emerson began construction in August of 2002 and
completed construction in April of 2003. During the construction, Sam's remained open for
business. Emerson erected barriers or fencing around the certain areas in which construction was
ongoing.

 On the evening of March 4, 2003, Braudrick, Fierro, and Fierro's son, Ruben Misquez, 
visited Sam's Club. Both Braudrick and Fierro had visited the store several times in the past; indeed,
the two visited approximately once a month. On this occasion, Braudrick drove to the store and
parked. The parking lot was dark, and it was windy. Misquez mentioned to Braudrick and Fierro
that the lighting in the parking lot was dark and indicated that the lighting was not adequate. The
three walked toward the entrance to the store, along the driveway in front of the store. Although
there was a sidewalk adjacent to the driveway, Fierro testified that it was blocked with carts. Fierro
also noticed heavy construction equipment in the area. Fierro and Braudrick noticed caution tape
in the parking lot. Fierro was aware that construction was going on at Sam's Club, because she had
visited the store a month prior to the night in question. Braudrick also testified that lights had been
strung in the area.

 As they walked towards the entrance, Fierro walked ahead of Braudrick. Braudrick tripped
on a speed bump and fell, injuring her hip. As she fell, she yelled to Fierro. Fierro, who had initially
walked past the speed bump without incident, turned to assist Braudrick and tripped on the speed
bump, injuring her ankle. The manager of the store arrived at the scene and called an ambulance,
which took Braudrick to a hospital. Braudrick required surgery on her hip. Fierro sought medical
treatment for her ankle the next evening. Braudrick and Fierro testified that they were aware that
there were speed bumps in the driveway. However, Misquez, Fierro, and Braudrick all testified that
the speed bump was not painted on that night. Fierro and Braudrick were unable to see the speed
bump, because it blended with the surrounding asphalt pavement.

 Following a trial, the jury found that Sam's Club did not have a right to control the paving
striping work done in the parking lot. The jury also answered in the negative as to whether the
negligence, if any, of Sam's Club or Emerson proximately caused the injuries to Appellants. Fierro
and Braudrick appeal the jury verdict on the grounds that Sam's Club was not entitled to a jury
question on the issue of right of control and that the jury's verdict was against the great weight and
preponderance of the evidence, so that the verdict was manifestly unjust.

II. DISCUSSION


A. Issue One


 We review a trial court's submission of jury questions and instructions under an abuse of
discretion standard, recognizing there is a presumption in favor of broad-form submission of
questions. Financial Ins. Co. v. Ragsdale, 166 S.W.3d 922, 926 (Tex. App.--El Paso 2005, no pet.);
see Tex. R. Civ. P. 277. In reviewing a jury charge, we consider the pleadings of the parties, the
evidence presented at trial, and the charge in its entirety. DeLeon v. Furr's Supermarkets, Inc., 31
S.W.3d 297, 300 (Tex. App.--El Paso 2000, no pet.). "We may not reverse unless the error, when
viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the
complaining party as was reasonably calculated and probably did cause rendition of an improper
judgment." Id. Whether the charge submits the controlling issues in the case, in terms of theories
of recovery or defense, is a question of law, which we review de novo. Financial Ins. Co., 166
S.W.3d at 926; DeLeon, 31 S.W.3d at 300.

 Appellants contend that the trial court erred when it permitted the jury to consider whether
Sam's Club had control over the paving and striping work that was done in the parking lot of the
premises, because the question was defective and not supported by the evidence. Question No. 1
provided:

 If you find the speed bump was unpainted at the start of the construction
project, then skip Question No. 1.


 Did Sam's East, Inc. have a right to control the paving and striping work
being done in the parking lot on the premises?


 "Right to control" requires that Sam's East, Inc. exercised or retained some
control over the manner in which the paving and striping work being done in the
parking lot was performed, other than the general right to order the work to start or
stop or to inspect the progress or receive reports.


The jury answered Question No. 1, "No."


 Question No. 2 provided:


 Did the negligence, if any, of those named below proximately cause the
occurrence in question?


 If you answered "No" to Question No. 1, then answer "No" as to SAM'S
EAST, INC. in Question No. 2.


 Answer "Yes" or "No" for each of the following:


 a. Sam's East, Inc. ____________ 

 b. Emerson Construction Company, Inc. ____________

 c. Margaret Braudrick ____________


Question No. 5 was identical to Question No. 2, with the exception of subpart c, which inserted
Fierro's name in place of Braudrick's. The jury answered "No" to each subpart of Questions Nos.
2 and 5.

 Appellants argue that a right to control question is proper only when: (1) the cause of action
is for negligent activity or (2) the premises defects at issue were created by an independent
contractor. Appellants contend that the unpainted speed bump was a dangerous condition of the
premises known by Sam's Club, and that it pre-existed any work done by Emerson. Appellants
argue that, under such circumstances, the issue of control of the premises is irrelevant.

 The duty owed by a premises owner or occupier is determined by the status of the plaintiff
at the time and place of the injury. Wong v. Tenet Hosps., Ltd., 181 S.W.3d 532, 537 (Tex. App.--El
Paso 2005, no pet.). An invitee is a person who enters the premises of another at the express or
implied invitation of the owner or occupier, for their mutual benefit. Id. The duty owed to an invitee
is to exercise reasonable care to protect against danger from a condition on the land that creates an
unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care
would have discovered. CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 101 (Tex. 2000); see also
Almanza v. Navar, 225 S.W.3d 14, 21 (Tex. App.--El Paso 2005, no pet.) (the duty owed to an
invitee is that of reasonable care).

 The essential elements of a premises liability claim are: (1) actual or constructive knowledge
of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable
risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate
the risk; and (4) that the owner's or occupier's failure to use such care proximately caused the
plaintiff's injury. Strunk v. Belt Line Road Realty Co., 225 S.W.3d 91, 100 (Tex. App.--El Paso
2005, no pet.). In addition, "to prevail on a premises liability claim a plaintiff must prove that the
defendant possessed-that is, owned, occupied, or controlled-the premises where injury occurred." 
Wilson v. Texas Parks & Wildlife Dep't, 8 S.W.3d 634, 635 (Tex. 1999) (per curiam). One who does
not own, occupy, or control premises may owe a duty of due care, if he undertakes to make the
premises safe for others. Id.

 Premises defects arising on property where an independent contractor is working may be
divided into two subcategories: (1) defects existing when the independent contractor enters and
(2) defects created by his work. Shell Oil Co. v. Khan, 138 S.W.3d 288, 295 (Tex. 2004); Coastal
Marine Serv., Inc. v. Lawrence, 988 S.W.2d 223, 225 (Tex. 1999). An owner or occupier has a duty
to inspect the premises and warn of concealed hazards that he knew or should have known about. 
"Only concealed hazards-dangerous in their own right and independent of action by another-that are
in existence when the independent contractor enters the premises fall into this first subcategory of
premises defects." Id. However, an owner or occupier has no duty with regard to defects created
by an independent contractor, unless he retains a right to control the work that created the defect. 
"The right to control must be more than a general right to order work to stop and start, or to inspect
progress. The supervisory control must relate to the activity that actually caused the injury, and grant
the owner at least the power to direct the order in which work is to be done or the power to forbid
it being done in an unsafe manner." Id. at 226.

 As Appellants note in their brief, the jury question at issue in this case followed Texas Pattern
Jury Charge 66.3, the comments to which provide that "PJC 66.3 is a predicate to the appropriate
liability question in common-law cases brought against a general contractor or property owner for
(1) the negligent activity of an independent contractor or (2) a premises defect created by an
independent contractor's work." Committee on Pattern Jury Charges, State Bar of Tex., Texas
Pattern Jury Charges--Malpractice, Premises & Products PJC 66.3 cmt. (2006 ed.). It is undisputed
that this case did not involve negligent activity. Rather, Appellants contend that the unpainted speed
bump was a pre-existing defect and that there was therefore no evidence that the premises defect was
created by an independent contractor. Accordingly, Appellants contend that the right to control
question was improper.

 There was, however, evidence that, prior to the construction project, the speed bumps in front
of the store were painted. Sam's Club's store manager testified that the speed bumps were painted
yellow prior to the start of the project. Question No. 1 directed the jury not to answer, if it found that
the speed bump was unpainted at the start of the construction project. By answering the question,
the jury implicitly indicated its finding that the speed bump had been painted prior to construction. 
 Appellants next argue that the trial court erred in failing to submit the issue of inadequate
lighting as part of Question No. 1. Sam's Club responds that the evidence conclusively established
that it did not have control over the lighting during the time of the construction. Where the evidence
supporting a party's affirmative defenses or claims is undisputed, such claim is conclusively
established and does not require submission to the jury. T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 222-23 (Tex. 1992); Richard Rosen, Inc. v. Mendivil, 225 S.W.3d 181, 192 (Tex.
App.--El Paso 2005, pet. denied). In order to make such a determination, we review the record to
determine whether the issue was disputed or was established by the evidence as a matter of law. 
Mendivil, 225 S.W.3d at 192.

 Sam's Club presented undisputed evidence that the parking lot lighting system was part of
the construction contract with Emerson. The construction contract provided that:

 3. All Wal-Mart and Sam's Club buildings electrical circuits serving the parking
lot lighting system shall be coordinated and constructed complete and operable to the
interface junction box as part of this contract. Installation of the parking lot lighting
system served by the Wal-Mart and Sam's Club buildings shall be coordinated and
constructed complete and operable to the interface junction box as part of this
contract.


 4. Primary electrical service to the utility interface point (the transformer) shall
be coordinated and/or constructed in accordance with the plans, specifications, and
the utility company requirements as a part of this Contract.


 The evidence was also undisputed that Emerson (or one of its subcontractors) performed
work on the lights. Javier Escalante, Emerson's foreman on the project, testified that Emerson did
rewiring of the parking lot lights; that Emerson was responsible for installing type KV light fixtures;
and that Emerson had problems with the lighting late in the project and had to call electricians to fix
the lights. In addition, Braudrick testified that there was temporary lighting in the parking lot on the
night of the incident. Mike Sullivan, the representative of the paving subcontractor, C.F. Jordan,
L.P., confirmed that temporary lighting was Emerson's responsibility. In addition, Sam's Club's
corporate representative, Javier Peña, and then-store manager Ray Rubio testified that, during the
construction, lighting problems were referred to Emerson, but Rubio testified that he did not tell
Emerson how to fix the lighting problems. Peña also testified that Sam's Club did not tell Emerson
how to do its job. On the other hand, there was no testimony that Sam's Club did exercise a right
of control over the project with regard to repair of the parking lot lights. Considering the foregoing,
it is apparent that the repairs to the lighting were part of the same project as the paving and striping
work, which the jury determined that Sam's Club did not have a right to control. As such, the
evidence conclusively established that Sam's Club did not have a right to control the light repairs. (2)

 Appellants also argue that the issue of right of control is restricted to circumstances in which
an employee of an independent contractor suffers injury from conditions caused by the independent

contractor or its employees. Appellants argue that, because they were invitees, not contractors, and
did not create the condition that caused them to fall, the issue of right of control is irrelevant. Fierro
and Braudrick apparently rely extensively on the opinion in Koko Motel, Inc. v. Mayo, 91 S.W.3d
41 (Tex. App.--Amarillo 2002, pet. denied), for this argument. (3)

 Koko Motel involved an injury to the guest at a motel. The motel had hired a plumber to
repair a sewer line on the premises. Id. at 44. The repair required the removal of soil and debris,
including pieces of concrete. The plumber placed the soil and debris on a trailer that was parked on
the sidewalk outside the entrance. Some of these materials fell off of the trailer onto the ground. 
The plumber had been performing the work for several days when a motel guest, Mayo, slipped on
a piece of concrete laying on the ground and fell, striking the trailer. Thereafter, Mayo was helped
to the lobby and told the receptionist about the injury. Id. at 48. The receptionist apologized to
Mayo and told him that she hoped that the motel could get maintenance to "clean that up" and that
maintenance had been told of the problem. She also noted that the motel had been meaning to "clean
it up." Although no barriers or markers surrounded the trailer at the time of the incident, motel
personnel had placed some there on other nights, so that guests could see the area. Id.

 Mayo brought suit against the motel, based on premises liability, and obtained a jury verdict
in his favor. Id. at 44-45. On appeal, the motel argued that the trial court erred in refusing to submit
an instruction to the jury on whether it controlled the work done by the plumber. Id. at 45. The
motel argued that, because the plumber was an independent contractor, it was not responsible for
conditions created by the plumber, unless it controlled the contractor's work. Id.

 The court noted that the issue before it did not involve the circumstance of whether a land
owner relinquished control over the premises or parts of the premises to an independent contractor. 
Id. at 45 n.4. The court reasoned that "when the conditions exist on the premises at the time the
invitee enters or were created by someone or something unrelated to the activity of the injured invitee
or his employer, the right to control is irrelevant. Then, the general contractor or the one occupying
the land must inspect the premises and warn invitees of dangerous conditions of which it knows or
should have known." Id. at 46. The court also relied on the current Restatement of Torts, which
provides:

 A possessor of land who entrusts to an independent contractor construction,
repair, or other work on the land, or on a building or other structure upon it, is subject
to the same liability as though he had retained the work in his own hands to others
on or outside of the land for physical harm caused to them by the unsafe condition
of the structure

 (a) while the possessor has retained possession of the land during the progress
of the work, or 

 (b) after he has resumed possession of the land upon its completion.


Id. at 47 (quoting Restatement (Second) of Torts § 422 (1965) (emphasis supplied by court)).

 The court concluded that "the owner/occupier cannot turn a blind eye to hazardous conditions
created by the independent contractor when it (the owner/occupier) retains control of the property
and continues to welcome invitees (who did not create or work for one who created the condition)
onto its premises." Koko Motel, 91 S.W.3d at 47.

 On its face, section 422 of the Restatement, quoted above and relied upon in Koko Motel,
demonstrates why it is inapplicable to this case. This section seeks to impose liability on the
premises' possessor in only two circumstances: "(a) while the possessor has retained possession of
the land during the progress of the work, or (b) after he has resumed possession of the land upon its
completion." Since the project was not complete, part (b) is clearly inapplicable; therefore, if section
422 and/or the opinion in Koko Motel are to be helpful to Appellants, it must be on the basis of part
(a).

 Unlike the facts in Koko Motel, in which the motel had attempted to exert some control over
the hazard by telling maintenance about it and by placing barriers or markers around the area, the
evidence in this case showed - and the jury found - that Sam's Club did not have control over the
repairs and remodeling that were part of the project. Moreover, as noted above, section 9G of the
construction contract expressly provided that Emerson would have control over the portion of the
premises in which repairs were being made. The contract provided that "Wal-Mart will take
'Possession' of new constructed areas upon completion of those areas." The contract also provided
that Emerson was "responsible for traffic control and necessary barricades that would facilitate
customer traffic and ensure customer safety." During construction, Emerson placed barricades or
fences on certain portions of the premises in which it was working and directed traffic flow. There
was no evidence that Sam's Club controlled these portions of the premises during that time. The
evidence indicated that Emerson was still working in the area where Appellants were injured. Fierro
and Braudrick noticed caution tape while walking in the area, and Braudrick testified that there was
temporary lighting in the parking lot. The trial court did not err in submitting the right to control
question to the jury. We overrule Issue One.

B. Issue Two


 In their second issue, Appellants contend that the jury's verdict was against the great weight
and preponderance of the evidence. When challenging the factual sufficiency of the evidence
supporting an adverse finding upon which the party had the burden of proof, the party must show
that the adverse finding is against the great weight and preponderance of the evidence. Cruz v. Paso
Del Norte Health Found., 44 S.W.3d 622, 629 (Tex. App.--El Paso 2001, pet. denied). A factual
sufficiency challenge requires examination of all the evidence. Gonzalez v. El Paso Hosp. Dist., 940
S.W.2d 793, 796 (Tex. App.--El Paso 1997, no pet.). A verdict may be set aside only if it is so weak
or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).

 The evidence was sufficient to support the jury's answer to Question No. 1. As discussed,
the evidence showed that Wal-Mart entered into a construction contract with Emerson for repairs
and remodeling of the adjacent Wal-Mart and Sam's Club stores. The evidence also demonstrated
that the construction contract provided that Wal-Mart would retake possession of areas of the project
upon completion of construction of those areas. The contract further provided that Emerson was
"responsible for traffic control and necessary barricades that would facilitate customer traffic and
ensure customer safety." There was testimony that Emerson erected barriers or fencing around the
certain areas in which construction was ongoing. Emerson began construction in August of 2002
and completed construction in April of 2003. Appellants' injuries occurred on March 4, 2003, which
was prior to the end of construction. Based on the testimony, the jury could reasonably have inferred
that construction was ongoing in the area where Appellants were injured.

 The evidence was also sufficient for the jury to find that Emerson was not negligent. 
Questions Nos. 2 and 5 asked the jury whether the negligence, if any, of various persons or entities
proximately caused the occurrence in question. The jury answered "No" with regard to Emerson,
Braudrick, and Fierro. Braudrick and Fierro testified that they had visited the store several times in
the past. Fierro was aware that construction was going on at Sam's Club, because she had visited
the store a month prior to the night in question. Both testified that the conditions in the parking lot
were dark and that it was windy. Misquez testified that he told Braudrick and Fierro that the parking
lot was dark, and he indicated that the lighting was not adequate. As they walked in the parking lot,
Fierro noticed heavy construction equipment in the area. Fierro and Braudrick noticed caution tape
in the parking lot. Braudrick also testified that lights had been strung in the area. Both Braudrick
and Fierro testified that they were aware that there were speed bumps in the driveway. There was
therefore sufficient evidence for the jury to find that Emerson did not proximately cause Appellants'
injuries. We overrule Issue Two.

III. CONCLUSION


 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


February 28, 2008


Before Chew, C.J., McClure, and Carr, JJ.

1. Sam's Club notes in its brief that its proper name is Sam's East, Inc. and that Wal-Mart Stores, Inc. d/b/a
Sam's Wholesale Club is a misnomer.
2. Appellants note the testimony by Emerson's foreman Escalante that problems with the parking lot lighting
pre-existed the construction project. Appellants argue that a jury question on the right to control is improper if the defect
is present prior to the commencement of the construction project. As Appellants state in their brief, in the case of a
defect that existed on the premises when an independent contractor/invitee enters, the premises owner has a duty to
inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious.
However, only concealed hazards that are dangerous in their own right fall into this category. See Coastal Marine Serv.,
988 S.W.2d at 225. In this case, the evidence showed that Emerson was aware of the condition of the lights and made
or had repairs made to the lights pursuant to the construction contract.
3. Although significant portions of the Koko Motel opinion are quoted verbatim in Appellants' brief, Appellants
do not actually cite it by name or citation.