COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

CARLOS GUTIERREZ, VICTOR AND § 
GUADALUPE FAMILY LIMITED           No. 08-07-00106-CV
PARTNERSHIP, AND VMGGFC, INC., §

            Appellant from the

          Appellants, §           49th District Court

v. §           of Webb County, Texas

PEOPLE'S MANAGEMENT OF TEXAS § 
I, LTD., SUCCESSOR IN INTEREST TO        (TC# 97-CVQ-000997-D1)
JOE MEDINA, TRUSTEE, §

          Appellee.

## O P I N I O N

Appellants, including Carlos Gutierrez, were sued in the 49th District Court of Webb County by Appellee, People's Management of Texas I, Ltd. (People's). The underlying suit involved several claims asserted by People's concerning two contiguous tracts of land, totaling approximately 20 acres. The Appellants pleaded several counterclaims and defended with adverse possession and for the value of improvements to the property. The court submitted three questions, which included a single question on adverse possession. The jury found that Gutierrez[1] had not adversely possessed the approximately 20 acres and thus had no legal right in the land. The remaining two questions, dealing with the value of improvements and the destruction of value concerning the 20 acres, were both answered with zero dollars. Appellants appeal the final judgment of the trial court and assert three issues for appeal. We reverse the trial court's decision and remand for trial.

## I. BACKGROUND

The underlying dispute involved a determination of the true ownership of two contiguous

---

[1] Reference herein to "Gutierrez," without a first name, shall be to Appellant/Defendant, Carlos ("Charlie") Gutierrez.

parcels of real property located in Webb County. The two tracts consist of a 14.6175- acre tract (the North tract) and a 5.937-acre tract (the South tract). The North and South tracts (collectively, the "Property"), are described by separate metes and bounds; however, the two tracts were conveyed to Joe Medina, trustee and predecessor-in-interest to People's, in a common deed. Prior to the opening of the parties' cases-in-chief, the court issued a clarification order on a motion for summary judgment, finding that People's held superior title and record title to the two tracts. Further, both parties stipulated, prior to the opening of the evidence, that Gutierrez had a 1.93-acre homestead (Homestead) located within the Property in dispute. Thus, the main issue at trial, presented to the jury in a single question, was whether Gutierrez defeated People's record title to the two tracts, containing 18.55 acres, by adverse possession. The jury answered the single adverse possession question in the negative.

During the trial, Appellee referred to the property as the "green tract" (the North tract) or the "red tract" (the South tract). Manadas Creek separates the green and red tracts. When Appellants answered and originally defended the suit by People's, Gutierrez referred to the two tracts collectively as the "Property." However, the nature, use, and occupancy of the two tracts varied, as evidenced by both parties at trial.

Appellants appeal the district court's submission of a single jury question for the entire Property, instead of two questions, one for each tract. Appellants submitted for the court's approval separate adverse possession questions for the two tracts, all of which were denied by the court.

People's, as the plaintiff, pursued claims for cloud of title, slander of title, trespass, nuisance, trespass to try title, injunctive relief, an equitable accounting, a declaratory judgement, a temporary restraining order, and attorney's fees. Appellants pleaded adverse possession as an affirmative defense and, in the alternative, for the value of improvements to People's land. Appellants attempted

unsuccessfully to obtain summary judgments on People's slander of title, trespass, and nuisance claims. They also made a motion for a directed verdict at the close of evidence, which was also denied.

On opening statements, presentation of evidence, and closing argument, and over the objection of Appellants, the plaintiff was permitted to go first at all stages of the trial. Because Appellants believe that they had the burden of proof on the entire case, they argue that they should have been permitted to proceed first on all stages of the trial. *See* TEX. R. CIV. P. 266, 269. During the course of the trial, counsel for Appellants made repeated requests that the court permit them to proceed first, at least on their adverse possession defense, because the burden of proof lay on them. As People's began to present its case, it quickly began presenting its whole case, to include evidence to disprove the adverse possession. When Appellants discovered that People's was putting on rebuttal evidence before they had been given a chance to present their affirmative defense, Appellants objected.

The trial court began to understand that the order of the parties and the way the evidence was being presented could be confusing to the jury. The court recognized that People's was rebutting Appellants' adverse possession defense before Appellants had put on their case. However, instead of pausing the trial and realigning the parties, the court instructed People's that, since it had already begun to rebut the adverse possession defense, it would not be able to present new evidence after Appellants put on their defense. The court made it clear that, because People's had put on evidence to rebut adverse possession first, and before Appellants had a chance to put on their affirmative defense, it would only be able to offer new evidence, after Appellants had presented their affirmative defense, to counter new evidence. Essentially, the judge instructed People's that it would be able to offer evidence only once, not twice.

During closing arguments, counsel for both parties made several inflammatory remarks. People's called Gutierrez a liar twice and struck over the shoulder of counsel, at the client, by stating that Gutierrez's counsel had also lied. Specifically, counsel for People's stated the following during closing argument:

> Ladies and Gentlemen of the Jury, I think I mentioned to you during voir dire that Baldemar Garcia is a friend of mine and Richard Morales[2] is a friend of mine. And I'm going to tell you that he flat out lied to you right now.
>
> And it actually pains me -- well, no. It doesn't pain me, actually, Charlie Gutierrez is also a liar.
>
> .   .   .
>
> And then I'm going to show you why Charlie Gutierrez is [a] liar.
>
> MR. GARCIA: Your Honor, at this point I need to object. That's an unethical attack on Charlie Gutierrez.
>
> MR. CAMPERO:[3]  Well, it's the truth.
>
> MR. GARCIA:  Well, it's unethical.
>
> MR. CAMPERO:  That's all there is.
>
> MR. GARCIA:  If Mr. Campero knows his ethical rules, he should know that he's not supposed [to] characterize people in a courtroom. You're not suppose[d] to opine on the credibility of witnesses. You're supposed to show the evidence and argue the evidence. And that's an unethical personal attack. I let it go once, Your Honor, but now it's twice. Now, if I need to give Mr. Campero an ethics lesson, I will, but he should know better that to call someone a liar in open court.
>
> MR. CAMPERO:  Your Honor, I'll --
>
> MR. GARCIA:  He can show the evidence, but he can't personally attack.
>
> THE COURT:  Counsel, the objection is overruled.

---

[2]  Garcia and Morales were Appellants' trial counsel.

[3]  Campero was People's trial counsel.

At the end of closing argument, Appellants moved for a mistrial, which the court denied. It also appears that their counsel, during the defense's closing arguments, used inflammatory language. The following statements were made at closing argument by Appellants' counsel:

> A civil trial is a search for the true truth. That's all we're doing here. We're looking for the truth. So, as you're looking for the truth you need to ask yourselves some questions and you need to look at the facts and try to figure out what actually happened.
>
> . . .
>
> And I think the reason you were told time and time again about Hugo Gutierrez's prominence is that it was an attempt to intimidate and to make you feel like you have to do what he wants because he's prominent . . . .
>
> There isn't a separate courtroom for prominent people.
>
> . . .
>
> [W]hen you're trying to tell someone a lie and you're trying to misrepresent something that takes a lot of scheming and planning, because you can be exposed by just one true piece of evidence.
>
> . . .
>
> Just like if you see a stolen automobile get stolen and stripped for parts, that's what they were doing, they were stripping it for parts because they knew that that last piece Charlie was going to fight for it.
>
> . . .
>
> Again, an attempt to keep you from the truth. It was an attempt to mislead you. It was an attempt to trick you.
>
> . . .
>
> [Hugo Gutierrez] wants you to take [Appellants'] land, and for good measure to teach him that people like Charlie can't stand up with the prominent ones in Laredo . . . .
>
> . . .
>
> [W]hy would Hugo Gutierrez use a trustee [to purchase the property]?

I'll tell you why. Because they didn't want to get blood on their hand. Because they knew this was a scam. Because they knew he didn't read or right [sic] English and they had been deprived of their property, and they that didn't want their prominence being affected by what they've done. And sometimes there's an honest way to make money, and you pride yourself when you go home and you sleep, and there's a dishonest and there's a tricky way and there's a sneaky way to make money.

Appellants contend that People's calling Gutierrez and his attorney liars and the court's failure to correct the inflammatory language were incurable harm and probably led to the rendition of an improper judgment.

The trial court submitted three fact questions to the jury: (1) adverse possession; (2) the value of improvements; and (3) the value of lost rent. Appellants have raised three issues on appeal: (1) Did the court err in not giving two instructions to the jury, one for the North tract and one for the South tract, concerning Appellants' adverse-possession defense? (2) Did the court err in not realigning the parties so that Appellants could present their evidence first on adverse possession? (3) Did Appellants suffer irreparable harm, that would require a new trial, when Appellee called Appellants and their counsel liars?

## II. DISCUSSION

**A. Should the jury have been asked only one question for both tracts of land or separate questions for each tract?**

This Court reviews a trial court's submission of jury questions and instructions under an abuse-of-discretion standard, recognizing that broad-form submission of questions is favored in Texas. *Financial Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.--El Paso 2005, no pet.); *see* TEX. R. CIV. P. 277. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986)). In reviewing jury charges, we consider the parties' pleadings, the evidence presented at trial, and the charge in its entirety. *DeLeon v. Furr's Supermkts., Inc.*, 31 S.W.3d 297, 300 (Tex. App.--El Paso 2000, no pet.). Even if the trial court abuses its discretion, we reverse only where the error in the jury charge is shown to be harmful. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749-50 (Tex. 1980). "'We may not reverse unless the error, when viewed in light of the totality of the circumstances, amounted to such a denial of the rights of the complaining party as was reasonably calculated [to] and probably did cause rendition of an improper judgment.'" *Braudrick v. Wal-Mart Stores, Inc.*, 250 S.W.3d 471, 475 (Tex. App.--El Paso 2008, no pet.) (quoting *DeLeon*, 31 S.W.3d at 300). Whether the charge submits the proper controlling issues in the case, in terms of theories of recovery or defense, is a question of law, which we review *de novo*. *Financial Ins. Co.*, 166 S.W.3d at 926; *DeLeon*, 31 S.W.3d at 300; *Braudrick*, 250 S.W.3d at 475.

Appellants contend that the trial court erred in submitting only one question to the jury on adverse possession of the Property. Instead, they argue that the court should have given two

questions on adverse possession, one for the North tract and another for the South tract.

To preserve error in jury charging, a party must make the trial court "aware of the complaint, timely and plainly." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). The Texas Rules of Civil Procedure explain how to preserve error regarding the failure to submit a question:

> Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party.

TEX. R. CIV. P. 278.

It appears that Appellants did properly submit questions, in substantially correct wording. They requested a series of proposed questions. The proposed questions offered several combinations, some of which treated the two tracts together and some of which treated the two tracts separately. Further, the content of the questions, taken from a pattern jury charge book, appear to offer a legally-correct definition of adverse possession. Appellants' proposed Question 1 contained the following language:

> Did Charlie Gutierrez/Victor and Guadalupe Family Limited Partnership hold the 5.937 acre tract in question in peaceable and adverse possession for a period of ten years?
>
> You are instructed that "adverse possession" means an actual and visible appropriation of property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person.
>
> You are instructed that "peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.
>
> You are instructed that to establish adverse possession, the possession must have been by a person who cultivates, uses, or enjoys the property.

Answer "Yes" or "No."

Answer: _____

Oil and Gas Pattern Jury Questions and Instructions, Oil, Gas & Energy Resource Law Section, 2.d (2005).

This definition closely follows the definition of "adverse possession" in the Texas Civil Practice and Remedies Code:

(1) "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

(2) "Color of title" means a consecutive chain of transfers to the person in possession that:

(A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

(B) is based on a certificate of headright, land warrant, or land scrip.

(3) "Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

(4) "Title" means a regular chain of transfers of real property from or under the sovereignty of the soil.

Tex. Civ. Prac. & Rem. Code Ann. § 16.021 (Vernon 2002). Based on the record, Appellants satisfied the requirement of submitting several substantially-correct proposed jury questions, all of which were denied for submission by the trial court. Appellants properly preserved the alleged error for this Court's review.

The Texas Rules of Civil Procedure provide a substantive, non-discretionary directive requiring trial courts to submit requested questions to the jury, if the pleadings and any evidence support them. Tex. R. Civ. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). A trial court may refuse to submit a question to the jury if (1) there is no evidence; (2) there are no pleadings; or

(3) the issue is uncontroverted. *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 443 (Tex. App.--Eastland 2006, pet. denied) (citing *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986)).  If we find more than a scintilla of evidence to support submission of a valid theory of recovery, it is reversible error to refuse to do so.  *Elbaor*, 845 S.W.2d at 243; *Rosell v. Central W. Motor Stages, Inc.*, 89 S.W.3d 643, 653 (Tex. App.--Dallas 2002, pet. denied).  "That is to say that a trial court may not refuse to submit an issue merely because the evidence was insufficient to support a judgment."  *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex. 1985); *Elbaor*, 845 S.W.2d at 243.

Looking at the pleadings and the evidence before this Court, we hold that the court did abuse its discretion by refusing to submit jury questions on the North and South tracts separately.  While Rule 278 requires that, for a party to obtain a requested jury instruction, there must be both pleadings and evidence to support the instruction, Tex. R. Civ. P. 278, the rule does not mean that the pleading must be exact or perfect.  A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved . . . ." Tex. R. Civ. P. 47(a).  In the absence of special exceptions,[4] the petition is construed liberally in favor of the pleader.  *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (citing *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)).  Courts should uphold the petition as to a cause of action if it can be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged.  *Roark*, 633 S.W.2d at 809; *Gulf, Colo. & S.F. Ry. v. Bliss*, 368 S.W.2d 594, 599 (Tex. 1963).  It is a reasonable inference that, when a party pleads adverse possession to a unit of land containing constituent parts, with separate legal descriptions, the claim will run to those constituent parts or elements individually.

---

[4] No special exceptions were filed in this case.

In the case before us, the two tracts of land, each having its own legal description and unified under a single deed, were both touched jointly and severally by pleading adverse possession unspecifically. The pleading requirement of Rule 278 was satisfied by Appellants' answer, in which they defended by asserting adverse possession under the 3-, 5-, and 10-year periods of limitations.

There was also sufficient evidence at trial to show that the two tracts of land were distinct enough to warrant the submission of separate questions for the two constituent tracts. If we find more than a scintilla of evidence to support the submission of separate questions, Appellants were entitled to the submission of two separate questions. *Elbaor*, 845 S.W.2d at 243; *Rosell*, 89 S.W.3d at 653. During trial, the two tracts making up the Property were described separately as the Green (or North) Tract and the Red (or South) Tract. Appellee referred to two tracts of land in its pleadings, and the two tracts within the common deed are described by separate metes and bounds.

Most importantly, Appellants' activities and use were markedly different on the South tract, as compared with the North. Specifically, on the South tract, Appellants used asphalt and concrete to shore up the banks of the Manadas Creek, filled holes with dirt and concrete, and leased space for the storage of truck trailers. On the North tract, Appellants' activities were much different. Gutierrez testified that he and his family did not use the North tract after 1985. Further, testimony showed that, after People's purchased the property in 1992, it did begin using and improving the North tract.

When viewed and considered together, the separate legal descriptions, the evidence of markedly different usage between the two, Appellants' abandonment of the North tract in 1985, and the use of the North tract in 1992 by People's has a significant legal impact. Indeed, the trial court seems to have recognized this impact, because it stated that it was inclined to grant a directed verdict against Appellants on the North tract and only submit a question concerning the South tract, because

the adverse possession evidence was weak for the North tract. This Court is satisfied that more than a scintilla of evidence existed to support separate questions' being submitted to the jury for the North and South tracts. Therefore, because both the pleadings and the evidence supported the submission of the requested instructions under Rule 278, the trial court abused it discretion in submitting a single question covering both tracts.

While it is true that the land in dispute is covered by a single deed, no authority supports the proposition asserted by Appellee that Appellants were not entitled to separate instructions for both tracts. The general rule is that, if a claimant has actual possession of land conveyed by deed containing two tracts, one of which was wrongly conveyed by the grantor, the claimant can obtain possession to both tracts, if they are contiguous.

> In passing on this particular question, the court in the case of *Houston Oil Co. v. Wm. M. Rice Institute* . . . held that where a survey had been divided into two contiguous tracts and both tracts were thereafter conveyed to appellee in the same deed, a description of the two tracts gave a complete description of the entire survey, and, as the record title to both of said tracts was in appellant during the entire period of appellee's occupancy, the possession by appellee of one of said tracts under said deed extended to both of said tracts constituting the land in controversy.

*Harvey v. Humphreys*, 178 S.W.2d 733, 737 (Tex. Civ. App.--Galveston 1944, writ ref'd w.o.m.) (citing 194 S.W. 413, 417 (Tex. Civ. App.--Beaumont 1917, writ ref'd)); *see also Allen v. Boggess*, 94 Tex. 83, 85-86, 58 S.W. 833 (1900) (recognizing that, when a deed conveyed two tracts of land, neither of which was a proper conveyance, the claimant had actual possession of neither tract, and thus could not constructively possess the other).

To be clear, this is a different situation from the case before the Court. Here, pursuant to their pleadings, Appellants are asserting possession as a naked trespasser to either the North tract, the South tract, or both. It would be wrong to assume that *Houston Oil* and *Harvey* express the rule necessary to resolve whether a naked trespasser is entitled to have two jury questions or only one.

Because this case is not dealing with a claimant who had actual possession by deed, another analysis is required. When evidence differs as to the nature of the use and the occupancy between two tracts of land, separate questions should be submitted for each tract. *See Patten v. Rodgers*, 430 S.W.2d 479, 482-83 (Tex. 1968), where evidence concerning two tracts of land, one being 320 acres and the other being 44 acres within a common deed, showed that the two tracts had been used for different purposes, had been fenced differently, and had been testified about by different witnesses. The Supreme Court held that this was enough for it to conclude that the jury should have been given separate questions as to the two tracts, because "[a] jury may well have determined that limitation title was perfected as to one tract, but not as to the other." *Id.* at 483.

Based on *Patten,* the evidence, and the pleadings supporting the submission of two instructions, it was not unreasonable for Appellants to request separate jury questions, and the court should have accommodated the request.

**B. Were Appellants Harmed by the Trial Court's Failure To Submit Separate Jury Questions Regarding the Two Separate Tracts?**

Beyond finding an abuse of discretion, this Court must also find that Appellants suffered harm as a result of the failure to submit two questions; error is reversible, only if the jury charge caused them harm. *Boatland of Houston*, 609 S.W.2d at 749-50. Harm is shown, and the error is reversible, only if it probably caused the rendition of an improper judgment or probably prevented Appellants from properly presenting the case on appeal. TEX. R. APP. P. 44.1(a).

In our opinion, the trial court's failure to submit separate questions on the two tracts (a) probably did cause the rendition of an improper judgment and (b) did prevent Appellants from being able to properly present their case on appeal. Given the opportunity, the jury might well have determined that Appellants had adversely possessed the South tract, but not the North. *Cf. Patten*,

430 S.W.2d at 482-83. Or, if the jury had held against them on adverse possession as to both the North and South tracts separately, Appellants could have made different evidentiary sufficiency arguments on appeal for the North tract and South tracts. Because, despite Appellants' timely request, the jury was not given two separate questions, neither we nor the parties can ever know how the jury might have answered the two separate questions.

The real problem is that we cannot determine whether the jury based its verdict on valid or invalid reasons, especially as to the South tract. "It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the appellate court is often unable to determine the effect of this error." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388-89 (Tex. 2000). "To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant should be held liable on proper, legal grounds." *Id.* at 388 (citing Louis S. Muldrow & William D. Underwood, *Application of the Harmless Error Standard to Errors in the Charge*, 48 BAYLOR L. REV. 815, 838-40 (1996) (emphasis omitted)).

In the present case, the trial court's erroneous submission of a single jury question regarding one combined tract, rather than separate questions regarding the two tracts, prevented Appellants from being able to isolate error. In practical terms, the trial court recognized that the evidence supporting an adverse possession claim as to the North tract was weak. The major problem with the court's recognition that the evidence was weak as to the North tract and yet submitting only one question for the entire property is that the evidence regarding the North tract substantially, and perhaps fatally, defeated whatever evidence the jury might otherwise have found in support of an adverse possession claim for the South tract, standing alone. During direct examination, Gutierrez

testified that, prior to 1985, his mother had been leasing the North tract for heavy equipment storage; however, he conceded that he and his family had stopped using the North tract in 1985. Since 1995, Appellee has used the North tract for various purposes, and a sales office was opened on the North tract that year. Further, the North tract had been used as a landfill until the mid-1970s and reclamation then took place up until the 1980s.

The record is largely absent concerning any meaningful activities by Appellants on the North tract. Conversely, Appellants had used the South tract heavily over the years. They filled gravel pits under an Army Corps of Engineers permit and built up the creek bed adjoining the tract. Appellants also leased the land to various business entities, and, over the years starting in 1983, they sold storage space to trucking companies and increased the available storage space by improving the land with fill. Substantially more activity occurred on the South tract during the course of Appellants' use. Adverse possession requires the possession by the claimant to be hostile, peaceful, exclusive, continuous, open, and notorious for the limitations period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021 (Vernon 2002). It is probable that the submission of one jury question was fatal to Appellants' adverse-possession claim on the South tract.

While it is uncertain whether a jury would have found that the evidence presented at trial satisfied an adverse-possession defense regarding the South tract, the submission of one question was harmful to the Appellants' defense. This harm prevented them from properly being able to present their case to the appellate courts. *Harris County v. Smith*, 96 S.W.3d 230, 235 (Tex. 2002). And we must presume harm, because this Court does not possess the ability to determine how the jury would have answered, if presented with two questions, instead of one.

We find that, because the pleadings and evidence supported the submission of two broad-form jury questions, one for the North tract and one for the South, the trial court erred by failing to

submit two questions. We must presume harm, because Appellants were unable to present their case to an appellate court and because the error also probably caused the rendition of an improper judgment.

## III. CONCLUSION

Because our decision on Appellants' first issue is dispositive, it is unnecessary to resolve their second and third issues. TEX. R. APP. P. 47.1. The trial court's decision is reversed, and the cause is remanded to the trial court for further proceedings.

DAVID WELLINGTON CHEW, Chief Justice

January 8, 2009

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating