PD-0072-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/16/2015 5:10:12 PM
Accepted 1/22/2015 2:33:48 PM
ABEL ACOSTA
CLERK

No. 06-13-00264-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JAMES EDWARD LEMING,                                          Appellant

v.

THE STATE OF TEXAS,                                          Appellee

Appeal from Gregg County

\* \* \* \* \*

STATE'S PETITION FOR DISCRETIONARY REVIEW

\* \* \* \* \*

FILED IN
COURT OF CRIMINAL APPEALS

January 22, 2015

ABEL ACOSTA, CLERK

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

# TABLE OF CONTENTS

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**1) Must a movement into another lane of traffic be unsafe before it can be deemed a violation of TEX. TRANSP. CODE § 545.060(a)?**

**2) Should a tip be deemed reliable when a person calls police to report erratic driving, provides his first name, remains on the telephone with the dispatcher, and follows the suspect's car until an officer arrives and the officer is able to independently corroborate information the caller provided?**

**3) Did the court of appeals err by reversing the trial judge's ruling on a motion to suppress that Appellant committed a traffic violation when the same facts objectively demonstrated reasonable suspicion?**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

APPENDIX  (Opinion of the Court of Appeals)

i

## IDENTITY OF THE PARTIES

Appellant: **James Edward Leming**.

Appellee: **The State of Texas**.

Trial Judge: **Hon. Alfonso Charles.**

Trial and appellate counsel for Appellant: **Clement Dunn**, Attorney at Law, 140 East Tyler Street, Suite 240, Longview, Texas 75601.

Trial counsel for the State: **Christopher Botto**, Assistant District Attorney, 101 East Methvin, Suite 333, Longview, Texas, 75601.

Appellate counsel for the State: **Zan Colson Brown**, Assistant District Attorney, 101 East Methvin, Suite 333, Longview, Texas, 75601, and **Lisa C. McMinn**, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# INDEX OF AUTHORITIES

## Cases

*Bass v. State*, 64 S.W.3d 646 (Tex. App.—Texarkana 2001, pet. ref'd). . . . . . . . . 4

*State v. Cerny*, 28 S.W.3d 796(Tex. App.– Corpus Christi 2000, no pet.).. . . . . . 4n

*State v. Elias*, 339. S.W.3d, 667 (Tex. Crim. App. 2011).. . . . . . . . . . . . . . . . . . . 9

*State v. Esparza*, 413 S.W.3d 81 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . . 9

*Fox v. State*, 900 S.W.2d 345 (Tex.App–Fort Worth, 1995). . . . . . . . . . . . . . . . . 8

*Hernandez v. State*, 983 S.W.2d 867 (Tex.App.–Austin 1998, pet. ref'd).. . . . . 4, 5

*Illinois v. Gates*, 103 S.Ct. 2317 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Leming v. State*, __S.W.3d__, No. 06-13-00264-CR
  (Tex. App.–Texarkana, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 3, 6, 8

*Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010).. . . . . . . . . . . . . . 4n, 5

*Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). . . . . . . . . . . . . . 7

*Navarette v. California*, 134 S.Ct. 1683 (2014) . . . . . . . . . . . . . . . . . . . . . . . . 6n, 7

*State v. Tarvin*, 972 S.W.2d 910 (Tex. App.– Waco 1998, pet. ref'd). . . . . . . . . . 4n

*Volosen v. State*, 277 S.W.3d 77, 80 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . 9


## Statutes

TEX. GOV'T CODE § 311.021 (2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. TRANSP. CODE § 545.057(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. TRANSP. CODE § 545.058(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. TRANSP. CODE § 545.060 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

## **Other**

Bryan A. Garner, A Dictionary of Modern Legal Usage 678 (2d ed. 1995). . . . . . 5

No. 06-13-00264-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JAMES EDWARD LEMING,                                                    Appellant

v.

THE STATE OF TEXAS,                                                        Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully urges this Court to grant discretionary review.

**STATEMENT REGARDING ORAL ARGUMENT**

The State Prosecuting Attorney does not request oral argument.

**STATEMENT OF THE CASE**

Appellant pled guilty to driving while intoxicated with two prior convictions and was sentenced to ten years confinement.   He appealed the denial of his motion to suppress.  The Court of Appeals reversed.  *Leming v. State*, __S.W.3d__, No. 06-

1

13-00264-CR (Tex. App.–Texarkana, 2014).

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals' published opinion was issued on December 17, 2014.

Neither party moved for rehearing.

## QUESTIONS FOR REVIEW

**1) Must a movement into another lane of traffic be unsafe before it can be deemed a violation of TEX. TRANSP. CODE § 545.060(a)?**

**2) Should a tip be deemed reliable when a person calls police to report erratic driving, provides his first name, remains on the telephone with the dispatcher, and follows the suspect's car until an officer arrives and the officer is able to independently corroborate information the caller provided?**

**3) Did the court of appeals err by reversing the trial judge's ruling on a motion to suppress that Appellant committed a traffic violation when the same facts objectively demonstrated reasonable suspicion?**

## ARGUMENT

A Longview police officer was dispatched to a busy road at approximately 2:00 p.m. to investigate a report from caller named "Arliss" that a white Jeep was "swerving from side to side." RR2: 6-8. The officer located the Jeep and advised the caller, who was still following the Jeep, to "back off." RR2: 7. The officer followed the Jeep and saw it drift left to the center line, and back to the right several times, coming within a few inches of the curb twice. RR2: 8. He testified that the "tires were on the stripes." RR2:8. The officer also noted that the car was traveling thirteen

2

miles below the speed limit and continued to slow as he followed it. RR2: 8, 15. He believed the driver was "somehow impaired" or had "a medical issue" and that swerving and low speed "was an indication that the driver is somehow either distracted or physically not able to operate his motor vehicle correctly." RR2: 9. The officer stopped the Jeep and ultimately arrested Appellant for driving while intoxicated. RR2: 12-13. The patrol car's dash camera video of the stop and the moments preceding it was admitted into evidence. RR2: 9-10.

The trial court denied the motion to suppress, stating that a traffic violation occurred when Appellant's car, "cross[ed] the center stripe and move[ed] partially into another lane of traffic." CR: 13-14. The court also noted that "the officer had received information from a named informant that the car was driving erratically." CR: 13-14.

The Court of Appeals held that the trial court erred by concluding that the car's movement constituted a traffic offense because Appellant's driving was not unsafe. *Leming*, slip op. at 6-7. It also held that the trial court erred by finding that Arliss was a "named" informant, and it equated him instead with an anonymous caller. *Id.* at 8. Viewing the video, the Court of Appeals characterized the "swerving" as more akin to a "drift" or "movement." *Id*. at 9. Nevertheless, because no traffic violation occurred, it reasoned the stop was justified only if the officer was acting in his

3

community caretaking function, which, it held, he was not. *Id*.

The Court of Appeals' analysis misconstrued Section 545.060 of the Transportation Code, failed to recognize the significance of Arliss' call in light of recent Supreme Court precedent, and failed to address whether Arliss' and the officer's observations amounted to reasonable suspicion.[1]

**1) Must a movement into another lane of traffic be unsafe before it can be deemed a violation of TEX. TRANSP. CODE § 545.060(a)?**

Section 545.060 states, "(a) An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." In support of its holding that movement out of a single lane must be unsafe before it violates the statute, the Court of Appeals relied on its previous opinion in *Bass v. State*, 64 S.W.3d 646, 651 (Tex. App.– Texarkana 2001, pet. ref'd).[2] *Bass* in turn relied on *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.–Austin 1998, pet. ref'd), which held that the vagueness of the "as nearly as practical" clause in

---

[1]The State does not challenge the Court of Appeals' determination that community caretaking was not shown.

[2]This Court has acknowledged the opinions in *Bass*, *State v. Cerny*, 28 S.W.3d 796, 800 (Tex. App.– Corpus Christi 2000, no pet.), and *State v. Tarvin*, 972 S.W.2d 910, 910-11 (Tex. App.–Waco 1998, pet. ref'd), but has not adopted their interpretation of the statute. *Mahaffey v. State*, 316 S.W.3d 633, 640 n35 (Tex. Crim. App. 2010).

4

subsection (1) indicates it was not intended to be a separate requirement apart from safety. *Id.* at 871. That court found support for this proposition in the fact that the Legislature chose the term "practical," which it defined as "manifested in practice; capable of being put to good use," rather than "practicable," meaning, "capable of being accomplished; feasible; possible." *Id.* (quoting Bryan A. Garner, A Dictionary of Modern Legal Usage 678 (2d ed. 1995)).

However, under TEX. GOV'T CODE § 311.021 (2), it is presumed that the entire statute was intended to be effective. It seems unlikely that the Legislature gave the "as nearly as practical" clause its own subsection and intended that it be entirely superfluous. The plain meaning of subsection (1) means that unless it is impractical to remain entirely in a single lane, one must do so. This prohibits needless lane changes or straddling the line or weaving without cause. Examples of impracticality in remaining entirely in a single lane might arise when a driver swerves to avoid a turtle or moves out of the way for a passing ambulance. *See Mahaffey*, 316 S.W.3d at 640.

When subsections (1) and (2) are read together, the statute requires a driver to remain in his lane but, if he must deviate due to some impracticality, he must do so safely. This requirement of both practicality and safety is consistent with other statutes that control leaving a lane of traffic. *See* TEX. TRANSP. CODE § 545.057(a)

(permitting passing on the right if it is done safely but only under enumerated circumstances); TEX. TRANSP. CODE § 545.058(a) (permitting driving on the shoulder if it is necessary and may be done safely, but only under enumerated circumstances).

Section 545.060 allows a driver to move out of his lane only if it is impractical to remain in a single lane *and* the movement can be performed safely. The Court of Appeals erred by reading the practicality element out of the statute.

**2) Should a tip be deemed reliable when a person calls police to report erratic driving, provides his first name, remains on the telephone with the dispatcher, and follows the suspect's car until an officer arrives and the officer is able to independently corroborate information the caller provided?**

The Court of Appeals dismissed the information provided by Arliss, stating, "there was no evidence presented that would have given [the officer] any reason to attribute credibility to the caller." *Leming*, slip op. at 8. It acknowledged that the officer attempted to corroborate the information by following Appellant's car. The Court, however, did not believe the videotape showed the car "swerving from side to side" as Arliss reported, but only drifting. *Id.* at 9. The Court of Appeals' brief analysis and its failure to cite the most recent Supreme Court case on anonymous 911 calls[3] led to an incorrect conclusion that could lead other courts astray.

---

[3]*In Navarette v. California*, 134 S.Ct. 1683 (2014), the Supreme Court found an anonymous 911 tip sufficiently reliable to support reasonable suspicion to make a DWI traffic stop.

"[W]hen an informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). The Court of Appeals erred by equating Arliss with an anonymous tipster. Arliss called in his report, gave his first name to the dispatcher, and continued his pursuit until the officer arrived and saw him following the Jeep. Under these circumstances a reasonably intelligent person could deduce that police had access to his: first name, cell phone number,[4] and the licence plate number of his car. This information is arguably more identifying than just a first and last name.

Arliss also demonstrated his basis of knowledge. His report was reliable because it was conveyed by an eyewitness in real time. "[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Navarette*, 134 S.Ct. at 1689, quoting *Illinois v. Gates*, 103 S.Ct. 2317 (1983).

The Court of Appeals' analysis conflicts with *Navarette* and should be corrected.

---

[4] *See Navarette*, 134 S.Ct. at 1690 (declining to find anonymous 911 calls *per se* reliable but pointing out that 911's ability to trace caller's phone numbers makes caller's use of the system relevant in reliability determination).

**3) Did the court of appeals err by reversing the trial judge's ruling on a motion to suppress that Appellant committed a traffic violation when the same facts objectively demonstrated reasonable suspicion?**

The Court of Appeals held that moving out of one's lane is an offense only if that move is executed in an unsafe manner. *Leming*, slip op. at 9. An inference that Appellant's driving was unsafe could be drawn from the evidence that traffic was heavy and Arliss called police and continued following Appellant until police arrived.[5] So even if the evidence presented was not sufficient to prove the violation or establish probable cause, it was sufficient to allow the trial court to determine that weaving for a significant period of time in heavy traffic is potentially unsafe. Poor driving that does not rise to the level of a traffic violation can provide reasonable suspicion of driving while intoxicated. *See Fox v. State*, 900 S.W.2d 345 (Tex.App–Fort Worth, 1995), pet. dism'd improv. granted, 930 S.W. 2d 607 (Tex. Crim. App. 1996) (weaving within lane and fluctuating speed provided reasonable suspicion for stop).

Perhaps the Court of Appeals did not address reasonable suspicion because the State's argument focused on community caretaking and an actual traffic violation.

---

[5]The undersigned does not presently have access to the videotape, but the State's brief in the Court of Appeals states that two cars that passed the Jeep "cautiously gave Leming wide berth." State's Brief at 16. It is reasonable to infer that those drivers believed Appellant's driving was unsafe.

8

But because the State prevailed in the trial court, it was not obligated to raise alternative arguments, or for that matter, any arguments on appeal. *Volosen v. State*, 277 S.W.3d 77, 80 (Tex. Crim. App. 2007). It is the responsibility of the Court of Appeals to review an appellant's claims "including any subsidiary issues that might result in upholding the trial court's judgment." *Id.* In *State v. Esparza*, 413 S.W.3d 81 (Tex. Crim. App. 2013), the Court reiterated, "[A] first-tier appellate court should reject an appellant's claim of reversible error on direct appeal so long as the trial court correctly rejected it 'on any theory of law applicable to the case,' even if the trial court did not purport to rely on that theory." *Id*. at 85 (citations omitted).

Here, the officer personally observed weaving in heavy traffic. Those facts led him to a subjective concern for Appellant's welfare rather than suspicion of a traffic offense or intoxication. But his subjective legal conclusions about why the stop was justified are irrelevant. *See State v. Elias*, 339. S.W.3d, 667, 675 (Tex. Crim. App. 2011) (an officer's subjective reason for stopping a vehicle need not be legitimate as long as the objective facts support the stop). A stop under the facts in this case was objectively reasonable because a reasonable officer under the same circumstances could suspect that Appellant's driving was unsafe and/or indicative of intoxication. The Court of Appeals should not have reversed the trial court's ruling on the motion to suppress without addressing this issue.

9

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, that the case be set for submission, and that after submission, this Court reverse the decision of the Court of Appeals.

Respectfully submitted,


/s/ LISA C. McMINN

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

I certify that, according to the WordPerfect word count tool, this document contains 2756 words.

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

## CERTIFICATE OF SERVICE

I certify that on this  day of, the State's Petition for Discretionary Review was served via certified electronic service provider to:

Zan Colson Brown
Assistant District Attorney
101 East Methvin, Suite 333
Longview, Texas, 75601
Zan.Brown@co.gregg.tx.us

Clement Dunn
Attorney at Law
140 East Tyler Street, Suite 240
Longview, Texas 75601
clementdunn@aol.com

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

11

**APPENDIX**



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00264-CR

_____

JAMES EDWARD LEMING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 41799-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

James Edward Leming was stopped by a Longview police officer as he drove his automobile along a busy thoroughfare. The State argues the officer's traffic stop of Leming was proper under the community caretaking function of the officer's law enforcement duty, citing the officer's testimony that he was concerned that Leming might have been somehow in distress.[1] Leming moved to suppress evidence obtained as a result of this traffic stop and, after the trial court overruled his motion, Leming entered a plea of guilty. We find the officer's actions were not reasonable in light of the totality of the circumstances, and the trial court erred to deny the suppression motion.

## I.     Traffic Stop

Longview police officer Manfred Gilow testified that about 2:00 p.m. January 20, 2012, he was dispatched to investigate a report from a caller who reported a vehicle "swerving from side to side." At the suppression hearing, the only reference to the identity of the caller was from Gilow, who made reference to the caller only as "Arliss."[2] After having been alerted to the content of the call, Gilow located the reported vehicle, eventually shown to be driven by Leming,

---

[1] *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) ("Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."). When a law enforcement officer compels a moving vehicle to stop, for the duration of the traffic stop, the driver and all occupants of the vehicle are effectively seized, for Fourth Amendment purposes. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

[2] At oral argument, the State mentioned that there was further identification in the offense report of the caller (which identified Arliss as a physician). However, this offense report was not introduced into evidence until the punishment stage of the trial. Accordingly, the trial court was not privy to this information when ruling on the motion to suppress. In reviewing the trial court's ruling on the motion to suppress, we will only consider evidence before the trial court at the suppression hearing. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

2

and began tracking that car. Gilow testified that he also made contact with Arliss, the informant (who was still following Leming's car), telling Arliss to "back off" so Gilow could better follow and observe the suspect vehicle.

Gilow followed Leming for about three minutes before conducting a traffic stop.[3] During the video-recorded period while Gilow was following, Leming's vehicle was observed in the outside lane. The road where this occurred was five lanes in width, with two lanes going each direction and a dedicated center turning lane. Almost immediately after Gilow's video camera began to record the incident, Leming's vehicle neared the white stripes separating the two lanes, and Lemings tires went astride the line and may have crossed it quite briefly. A similar approach (and, perhaps, encroachment) of the line was repeated shortly thereafter. From reviewing the video recording, it cannot be conclusively said that the vehicle crossed the lines for the lanes. Gilow's testimony was that the "tires were on the stripes." Later in the video recording, Leming's truck also drifted to the right, towards the curb. Gilow testified that Leming's car almost struck the curb twice; on the video recording, the vehicle appears to drift toward the curb on more than one occasion, coming within a few inches of the curb itself.

About thirty seconds after Leming's car touches (and possibly crosses) the lane markers separating his outside lane of traffic from the inside lane, two cars pass Leming in that inside lane. Throughout the period covered in the recording, a large number of automobiles are shown to pass, traveling on the two approaching lanes which are across the dedicated turn lane, between

---

[3]The State introduced a video recording from Gilow's police car. The video recording is of good quality, and we base our recitation of the facts on this video recording and Gilow's testimony.

3

Leming's truck and the oncoming traffic. Gilow described the traffic as "pretty good" or "heavy."

Gilow indicated that rather than following Leming as long as he did, he "would have liked to stop him way earlier . . . but the traffic was too heavy." Gilow said he waited until there was an area with parking lots in the vicinity so he would not have to pull the driver over in such a way as to block the road and thereby put other drivers in danger. He observed the suspect driving thirteen miles below the posted limit of forty-five miles per hour, and as Gilow followed and observed, the driver "slowed down more and more." It bears noting that during the video-recorded period, Leming came to a complete stop at a traffic light and exhibited no unusual driving behavior except that noted above, proceeding to advance with the rest of the traffic, although slower than the prevailing traffic pattern.

Gilow was concerned

[t]hat the driver [was] somehow impaired, a medical issue, a lot of stops, this -- welfare check stops, they have medical issues that -- diabetic shocks, they just don't know when they're -- still driving, functioning, but they really don't -- don't know. Due to the fact that it was way below speed, the swerving in its lane itself, right, left, almost hitting the curbs twice, it was an indication that the driver is somehow either distracted or physically not able to operate this motor vehicle correctly.

After stopping the vehicle, Gilow observed that Leming, the driver, appeared to be "very tired," that he "had a hard time keeping his eyes open," and that "[h]e was just very, very exhausted." Leming admitted having taken clonazepam and hydrocodone. He was arrested for driving while intoxicated (DWI). After having been indicted for felony DWI and subsequent to

an unfavorable ruling on his motion to suppress, Leming entered his guilty plea to that offense. *See* TEX. PENAL CODE ANN. § 49.09(b) (West Supp. 2014).

Leming argues the trial court should have suppressed any evidence which came from Gilow's stop because the stop was neither reasonable nor justified under the circumstances. At the hearing, the State never specifically invoked the community caretaking function, in so many words; but as can be seen in some of Gilow's testimony, he testified he was concerned about the welfare of the driver, who turned out to be Leming.[4]

The trial court's order denying the motion to suppress made no mention of the community caretaking function of the law enforcement officer:

1) The video, State's Pre-trial exhibit 1, clearly shows the Defendant's vehicle cross the center stripe and move partially into another lane of traffic. This is a violation of the law.

2) In addition, the officer had received information from a named informant that the Defendant's vehicle was driving erratically. Based on a totality of the circumstances, the officer was justified in stopping the vehicle.

Irrespective of whether the community caretaking function was considered by the trial court, we will "uphold the trial judge's ruling if it is reasonably grounded in the record and correct on any

---

[4]In closing arguments at the suppression hearing, the State said Gilow's stop of Leming was reasonable, arguing Leming "wasn't driving safe for the other people on the road and he certainly wasn't driving safe for himself."

5

theory of law applicable to the case." *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013).[5]

First, we read the trial court's order denying Leming's request for suppression as finding that Leming committed a traffic offense by leaving his lane of traffic and crossing into the next, observing that the video recording of the events leading to the traffic stop "clearly shows the Defendant's vehicle cross the center stripe and move partially into another lane of traffic. This is a violation of the law." As we have said, we have reviewed the video-recorded exhibit and cannot say definitively that Leming's truck crossed into the next lane. However, even deferring to the trial court's view that Leming left his lane of traffic,[6] the record does not support a finding

---

[5]As set out in *Johnson v. State*,

> We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard [of review]. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same deference to a trial court's rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). We review de novo the trial court's application of the law and determination of questions not turning on credibility. *Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of [Leming's] motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

*Johnson v. State*, No. 06-13-00227-CR, 2014 WL 4695063, at *2 (Tex. App.—Texarkana Sept. 22, 2014, no pet.) (mem. op., not designated for publication).

[6]As a general rule, we defer to the trial court's factual findings; but where, as here, there is a video recording in the record from which we can review the trial court's finding of fact, we will not defer where the video clearly presents "indisputable . . . evidence contradicting essential portions of [witness] testimony." *Carmouche*, 10 S.W.3d at 332. However, we cannot say the video recording presents clear, indisputable evidence contradicting Gilow's testimony.

6

that a traffic offense occurred. From the context of Leming's argument to the trial court and statements of the trial court, it appears the trial court's ruling found a violation of Section 545.060(a) of the Texas Transportation Code, requiring a driver to drive, as nearly as practical within a single lane and prohibiting the changing of lanes unless such can be done safely. TEX. TRANSP. CODE § 545.060(a) (West 2011). Here, Leming directed the trial court's attention to *Bass v. State*, 64 S.W.3d 646, 651 (Tex. App.—Texarkana 2001, pet. ref'd), where this Court found the officer's warrantless traffic stop to have been unlawful. The basis for the traffic stop was Bass' failure to maintain a single lane; but even though there was evidence that he changed lanes, there was no evidence that it was done in an unsafe manner. Therefore, the traffic stop did not fall within the requisites of the section of the Transportation Code the officer invoked as the basis for an unlawful act. *Id.* The trial court, upon announcing it was taking the matter under advisement, specifically stated an intention to read *Bass*.

Even should we concur with the conclusion of the trial court that Leming's car was shown to have encroached into the adjacent lane, that act alone does not constitute a traffic offense. In order for it to have been unlawful, the encroachment must have been made unsafely. On each of the two instances one could judge that Leming encroached on the line dividing the lanes, there was no real danger of his colliding with another vehicle in the adjacent lane. The closest time interval to the occupancy of that adjacent lane by another car was about fifteen seconds after Leming was no longer near the dividing line. When one takes the speed of the

The officer said Leming's "tires were on the stripes"; and it is possible the trial court viewed the video recording and found the tires to have crossed into the next lane.

7

traffic and the totality of the circumstances into account, we cannot say that any such encroachment from lane to lane by Leming was done in an unsafe manner. Therefore, we find the trial court's ruling that the stop was prompted by the officer's observation of a traffic violation to be unsupported by the record.

The trial court also found that because Gilow was acting on information from a "named informant" claiming that Leming's "vehicle was driving erratically," he was justified in stopping Leming's vehicle. However, the record as it existed at the time the trial court ruled on the issue of suppression does not support the trial court's finding that Gilow was responding to information from a named informant. Although the State's questioning of Gilow and its closing argument at trial asserted that the caller gave his name and contact information, that information (other than the name "Arliss") was not developed or presented at the suppression hearing. There was no evidence presented that would have given Gilow any reason to attribute credibility to the caller. Absent such information, the trial court was given no reason to believe that Gilow was responding to anyone more believable than an anonymous caller.[7] A tip from an anonymous caller, standing alone, rarely supplies reasonable suspicion for a stop because it lacks "'sufficient indicia of reliability.'" *State v. Whittington*, 401 S.W.3d 263, 276 (Tex. App.—San Antonio 2013, no pet.) (quoting *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011)).

---

[7]Other than saying he was responding to a caller who said the suspect vehicle was "swerving from side to side," Gilow neither elaborated on any other information he may have been given by the dispatcher, nor did the State attempt to elicit such information, such as occurred in *Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011), or *Brother v. State*, 166 S.W.3d 255 (Tex. Crim. App. 2005).

8

There is more information here than a simple anonymous telephone call. Gilow attempted to corroborate the information from the citizen caller by following Leming for about three minutes and video recording the events he witnessed. Based on our view of the recording, we hesitate to call Leming's driving "swerving from side to side," which is what was reported by the caller to Gilow. The video recording does show that Leming's car drifted or moved from side to side within its lane of traffic and, perhaps, even encroached into the adjacent lane marked for travel in the same direction, and one person's belief that a "swerve" had taken place may be construed by another as being a "drift" or "movement." However, we do not find this significant to our analysis; at issue is the reasonableness of Gilow's stop of Leming. No traffic violation having occurred, the only basis for the stop, under the facts presented, would be if Gilow was acting in the community caretaking function of his law enforcement duties, not because of an observation of a violation of the law.

## II.    Community Caretaking Function

The Texas Court of Criminal Appeals has recognized the community caretaking exception to the Fourth Amendment's requirement for an antecedent search warrant. "As a part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). That said, "[A] police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose." *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).

9

"Whether an officer properly invoked his community-caretaking function requires a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable." *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012) (citing *Corbin*, 85 S.W.3d at 277). The Court of Criminal Appeals listed four non-exclusive factors to determine whether an officer was legitimately acting to give assistance (i.e., was the officer's belief the individual needed help reasonable):

> (1)      the nature and level of the distress exhibited by the individual;

> (2)      the location of the individual;

> (3)      whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

> (4)      to what extent the individual—if not assisted—presented a danger to himself or others.

*Wright*, 7 S.W.3d at 152. "The Court of Criminal Appeals has also recognized that a police officer may stop and assist an individual who a reasonable person, given the totality of the circumstances, would believe is in need of help." *Lebron v. State*, 35 S.W.3d 774, 777 (Tex. App.—Texarkana 2001, pet. ref'd) (citing *Wright*, 7 S.W.3d at 151).

In *Gonzales v. State*, 369 S.W.3d 851 (Tex. Crim. App. 2012), while an officer was stopped at a stoplight just before 1:00 a.m., he observed Gonzales pull off the road and stop on the shoulder. "The area where Gonzales stopped was on the way out of town towards the neighboring town, with only a few businesses in the area, no houses nearby, and only light traffic passing by at that time of night." *Id.* at 853. The officer said he pulled over to see if the driver

10

needed assistance or had a flat tire or any other problem. Based on those circumstances, the Court of Criminal Appeals found that it was reasonable for the officer to believe the driver was in some kind of distress, "mechanical, health-related, or otherwise," when he saw the car pull off the road at around 1:00 a.m. *Id.* at 856.

In the *Gonzales* case, when we consider the location of the encounter (the second *Wright* factor), there were no houses, and only a few businesses around; it was on the side of the road heading out of town; there was little traffic in the area at the time of night; and the area was not heavily populated. These considerations weighed in favor of the reasonableness of the officer's action. *Gonzales*, 369 S.W.3d at 856. As for the third factor, the record did not establish whether the officer could tell how many people were in Gonzales' car, but the relative isolation of the area and time of night weighed toward finding that he had little other access to assistance other than the officer.

The fourth factor (the degree of danger the driver posed to himself or others) presented an "awkward fit to the circumstances as observed by" the officer. *Id.* at 856–57. Although the officer observed "indicia of distress, he was unaware of Gonzales's precise distress, much less whether the distress rose to a level of danger to Gonzales or others." *Id.* at 856. The Texas Court of Criminal Appeals declined to "assume that danger always accompanies witnessed distress." *Id.* "But in this case, Officer Becker could have reasonably concluded that Gonzales was suffering from distress resulting from car trouble, a flat tire, or running out of gas—a distress no less significant to an officer's function as a public servant." *Id.* Noting the "awkward

11

fit" of the present circumstances to the considered factor, the Court of Criminal Appeals "afforded little weight" to this factor. *Id.* at 856–57.

Under the totality of the circumstances, it was reasonable for the officer to believe Gonzales was in need of help, and thus, the officer was reasonably exercising the community caretaking function of his job. *Id.* at 857.

In *Corbin*, an officer observed Corbin, around 1:00 a.m., both cross the side stripe and drive about twenty feet on the shoulder as he proceeded at about thirteen miles per hour below the posted speed limit. The officer stopped Corbin for failure to maintain a single lane and as a community caretaking function. The first *Wright* factor (level of distress) was low. The Court of Criminal Appeals pointed out that at fifty-two miles per hour, the twenty feet the officer saw Corbin drive on the shoulder would be covered in less than a second, and the officer followed Corbin another mile without reporting or observing any other traffic infractions or unsafe activity. *Corbin*, 85 S.W.3d at 277–78. The second *Wright* factor (location) was neutral. There was nothing in the record other than relating that the stop occurred at an intersection. The higher court called into question this Court's finding that the intersection of a highway and interstate was a "somewhat isolated stretch of interstate highway." *Id.* at 278. On that point, the Court of Criminal Appeals stated, "Since there is nothing in the record indicating that this area is isolated with little traffic and no business[es] or houses nearby, it cannot support the ruling. At best, it is a neutral factor." *Id.* The third factor weighed in favor of the stop—the defendant was alone in his car, and there was no indication of access to assistance absent the officer's stop. The fourth

12

factor weighed against the stop. The only evidence of Corbin being a danger to himself or others—the line crossing—ended after a second, and there was no further evidence of danger. Thus, the Court of Criminal Appeals found that the stop was not authorized under the community caretaking function.

### III.    Application to Instant Facts

We begin by finding that Gilow, based on his testimony, could have been found to have been primarily motivated by the community caretaking function of his duties as a law enforcement officer. We must now consider whether his belief that Leming was in need of help was reasonable. As to the first *Wright* factor, we find that Leming was exhibiting little to no distress based on Gilow's observations. At most, the vehicle may have crossed the lane lines into the next (inside) lane, but this happened when no other cars were in the immediate vicinity. Gilgow continued to follow and observe Leming almost two more minutes after this initial observation. In that time, although Leming's truck is observed to drift or swerve within his lane of traffic, we cannot say that this is an indication of distress. Although Leming's truck is observed to approach the curb on the right-hand side of the lane of traffic, it is not observed being close to hitting or riding up the curb. Also, Leming observes traffic laws by coming to a complete stop at a stop light; there was nothing indicating distress in that stop or the subsequent move forward with traffic.

As for the location, Leming was in the middle of Longview, Texas, on a well-traveled thoroughfare. If Leming were actually in distress or danger, he had ample opportunity to seek help; there was no observable need of assistance from law enforcement. Somewhat concomitant with location, we consider whether Leming was alone or whether he had a passenger who would be in a

13

position of tendering any needed help or assistance. There is nothing in the record suggesting that Gilow ever attempted before the traffic stop to determine whether Leming was alone or accompanied (it is not possible to determine that from the video recording). These two factors do not support a finding that Gilow's decision to stop Leming was reasonable as a community service endeavor.

The evidence could be construed to find some danger to Leming or others. Driving a motor vehicle is always a potentially dangerous act. However, we do not see the video as establishing that Leming was operating the vehicle in an unsafe or dangerous manner, even in the period of about three minutes for a distance of several city blocks. Even if Leming did briefly leave his lane of traffic, the other traffic was not so close as to conclude that Leming or others had been placed in danger by his driving. This factor weighs against the stop.

The community caretaking exception to warrantless seizures is to be applied narrowly. *Wright*, 7 S.W.3d at 152. Considering the totality of the circumstances, we find Gilow's stop of Leming's truck was not reasonable under the community caretaking function. The trial court abused its discretion in denying the motion to suppress. We reverse the trial court's ruling and remand this case to that court for further proceedings consistent with this opinion.


Bailey C. Moseley
Justice

Date Submitted:     November 10, 2014
Date Decided:       December 17, 2014

Publish

14