PD-0072-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/20/2015 3:47:40 PM
Accepted 5/22/2015 10:48:52 AM
ABEL ACOSTA
CLERK

No. PD-0072-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JAMES EDWARD LEMING, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Gregg County

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

FILED IN
COURT OF CRIMINAL APPEALS

May 22, 2015

ABEL ACOSTA, CLERK

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

# NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

Appellant: **James Edward Leming**.

Appellee: **The State of Texas**.

Trial Judge: **Hon. Alfonso Charles.**

Trial and appellate counsel for Appellant: **Clement Dunn**, Attorney at Law, 140 East Tyler Street, Suite 240, Longview, Texas 75601.

Trial counsel for the State: **Christopher Botto**, Assistant District Attorney, 101 East Methvin, Suite 333, Longview, Texas, 75601.

Appellate counsel for the State: **Zan Colson Brown**, Assistant District Attorney, 101 East Methvin, Suite 333, Longview, Texas, 75601, and **Lisa C. McMinn**, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**1)  Must a movement into another lane of traffic be unsafe before it can be deemed a violation of TEX. TRANSP. CODE § 545.060(a)?**

**2)  Should a tip be deemed reliable when a person calls police to report erratic driving, provides his first name, remains on the telephone with the dispatcher, and follows the suspect's car until an officer arrives and the officer is able to independently corroborate information the caller provided?**

**3)  Did the court of appeals err by reversing the trial judge's ruling on a motion to suppress that Appellant committed a traffic violation when the same facts objectively demonstrated reasonable suspicion?**

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# INDEX OF AUTHORITIES

*Alabama v. White*, 496 U.S. 325 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Baldwin v. State*, 278 S.W.3d 367 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . 11

*Bass v. State*, 64 S.W.3d 646 (Tex. App.– Texarkana 2001). . . . . . . . . . . . . . . . . 4

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991).. . . . . . . . . . . . . . . . . . . 5

*Curtis v. State,* 238 S.W. 376, 380 (Tex. Crim. App. 2007).. . . . . . . . . . . 12, 13, 14

*Derichsweiler v. State,* 348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . . 11

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . 12, 14

*Fox v. State*, 900 S.W.2d 345 (Tex. App.– Fort Worth, 1995).. . . . . . . . . . . . . . . 12

*Hernandez v. State*, 983 S.W.2d 867 (Tex. App.–Austin 1998).. . . . . . . . . . . . . . . 5

*Innes v. State*, 293 S.W. 821 (Tex. Crim. App. 1926) .. . . . . . . . . . . . . . . . . . . . . 13

*Illinois v. Gates*, 463 U.S. 213 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Leming v. State*, 454 S.W.3d 78 (Tex. App.–Texarkana, 2014).. . . . . . . . . . . 1, 4, 9

*Lothrop v. State*, 372 S.W.3d 187 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . 7, 8

*Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . .5, 6

*Martinez v. State*, 348 S.W.3d 919 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . 9

*Navarette v. California*, 134 S. Ct. 1683 (2014).. . . . . . . . . . . . . . . . . . . . . . . . . 10

*Plouff v. State*, 192 S.W.3d 213(Tex. App. – Houston [14th Dist.] 2006).. . . . . . 13

*State v. Cerny*, 28 S.W.3d 796 (Tex. App.– Corpus Christi 2000).. . . . . . . . . . . . 5

*State v. Duarte*, 389 S.W.3d 349 (Tex. Crim. App. 2012)... . . . . . . . . . . . . . . . . 9

*State v. Elias*, 339. S.W.3d 667 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . 15

*State v. Esparza*, 413 S.W.3d 81 (Tex. Crim. App. 2013). . .. . . . . . . . . . . . . 14

*State v. Field*, 847 P.2d 1280 (Kan. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Tarvin*, 972 S.W.2d 910 (Tex. App.–Waco 1998). . . . . . . . . . . . . . . . 5

*Texas v. Brown*, 460 U.S. 730 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Volosen v. State*, 277 S.W.3d 77 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . 14

**Statutes**

TEX. GOV'T CODE § 311.021(2)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. TRANSP. CODE §131.902(d)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. TRANSP. CODE  § 203.031(a-1)(4)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . .6

TEX. TRANSP. CODE § 257.026 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

TEX. TRANSP. CODE § 545.051(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. TRANSP. CODE § 545.058(a)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. TRANSP. CODE § 545.060(a).. . . . . . . . . . . . . . . . . . 2, 3, 4, 6, 7, 8, 14, 15

TEX. TRANSP. CODE § 545.101(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Other**

http://www.mirriam-webster.com/dictionary/practical.. . . . . . . . . . . . . . . . . . . 6n

http://www.vocabulary.com/articles/chooseyourwords/practical-practicable. . . . 6n

No. PD-0072-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JAMES EDWARD LEMING,                                        Appellant

v.

THE STATE OF TEXAS,                                        Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully presents to this Court its brief on

the merits.

## STATEMENT REGARDING ORAL ARGUMENT

The State did not request argument and the Court did not grant it.

## STATEMENT OF THE CASE

Appellant pled guilty to felony driving while intoxicated and was sentenced to

ten years' confinement. He appealed the denial of his motion to suppress. The Court

of Appeals reversed. *Leming v. State*, 454 S.W.3d 78 (Tex. App.–Texarkana, 2014).

1

# ISSUES PRESENTED

1) Must a movement into another lane of traffic be unsafe before it can be deemed a violation of TEX. TRANSP. CODE § 545.060(a)?

2) Should a tip be deemed reliable when a person calls police to report erratic driving, provides his first name, remains on the telephone with the dispatcher, and follows the suspect's car until an officer arrives and the officer is able to independently corroborate information the caller provided?

3) Did the court of appeals err by reversing the trial judge's ruling on a motion to suppress that Appellant committed a traffic violation when the same facts objectively demonstrated reasonable suspicion?

# STATEMENT OF FACTS

A Longview police officer was dispatched to a busy road at approximately 2:00 p.m. to investigate a report from a caller named "Arliss" that a white Jeep was "swerving from side to side." RR2: 6-8. The officer located the Jeep and advised the caller, who was still following it, to "back off." RR2: 7. The officer followed the car and saw it drift left to the center line and back to the right several times, coming within a few inches of the curb twice. RR2: 8. He testified that the "tires were on the stripes." RR2:8. The officer also noted that the car was traveling thirteen miles per hour below the speed limit and continued to slow as he followed it. RR2: 8, 15. He believed the driver was "somehow impaired" or had "a medical issue" and that swerving and low speed "was an indication that the driver is somehow either distracted or physically not able to operate his motor vehicle correctly." RR2: 9.

2

The officer stopped the car and ultimately arrested Appellant for driving while intoxicated. RR2: 12-13. The patrol car's dash camera video of the stop and the moments preceding it was admitted into evidence. RR2: 9-10.

The trial court denied the motion to suppress, stating that a traffic violation occurred when Appellant's car, "cross[ed] the center stripe and move[ed] partially into another lane of traffic." CR: 13-14. The court also noted that "the officer had received information from a named informant that the car was driving erratically." CR: 13-14.

## SUMMARY OF THE ARGUMENT

Section 545.060(a) of the Transportation Code includes two requirements: 1) that a driver remain in one lane if it is practical to do so, and 2) that any departure from the lane be done safely. Failure to abide by either provision is a violation. Therefore, the officer's observation of Appellant's tires crossing the stripes without apparent reason justified the stop, even if his departure from the lane was not unsafe. The 911 report about Appellant's car swerving from side to side was sufficiently reliable to be considered in the analysis because the caller provided his first name, location, and a description of the suspect car, which he followed until police arrived and "waived him off." The report and the officer's observations were sufficient to provide reasonable suspicion of driving while intoxicated even if the officer did not

3

subjectively suspect intoxication. Specialized training or experience is not necessary to support objectively reasonable suspicion that, regardless of the time of day, a driver who demonstrably weaves for an extended period of time is intoxicated.

**ARGUMENT**

**Court of Appeals' opinion**

The Court of Appeals held that the car's movement did not constitute a traffic offense because, even assuming it crossed into another lane of traffic, Appellant's driving was not unsafe. *Leming*, 454 S.W.3d at 83. It also held that Arliss was not a "named" informant, equating him instead with an anonymous caller. *Id*. at 83-84. Because no traffic violation occurred, the Court reasoned that the stop was justified only if the officer was acting in his community caretaking function, which, it held, he was not. *Id.* at 84, 86.

**TEX. TRANSP. CODE § 545.060(a)**

Section 545.060 states, "(a) An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." The Court of Appeals held that movement out of a single lane does not violate the statute unless it is unsafe, citing *Bass v. State*, 64 S.W.3d 646, 651 (Tex.

4

App.– Texarkana 2001, pet. ref'd).[1] *Bass* relied on *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.–Austin 1998, pet. ref'd), which held that the vagueness of the "as nearly as practical" clause in subsection (1) indicates it was not intended to be a separate requirement apart from safety. *Id*. at 871.

However, under TEX. GOV'T CODE § 311.021 (2), it is presumed that the entire statute was intended to be effective. It seems unlikely that the Legislature gave the "as nearly as practical" clause its own subsection but intended that it be entirely superfluous. In addition, general statutory construction principles do not permit terms in a statute that are ambiguous to be ignored. Instead, when a term is ambiguous, the reviewing court uses extratextual sources to discern the legislative intent. *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

*Hernandez* found "as nearly as practical" to be ambiguous because the Legislature chose the term practical, which it defined as "manifested in practice; capable of being put to good use," rather than practicable, meaning, "capable of being accomplished; feasible; possible." *Id*. (quoting Bryan A. Garner, A Dictionary of Modern Legal Usage 678 (2d ed. 1995)). However, practical has other definitions

---

[1]This Court has acknowledged the opinions in *Bass*, *State v. Cerny*, 28 S.W.3d 796, 800 (Tex. App.– Corpus Christi 2000, no pet.), and *State v. Tarvin*, 972 S.W.2d 910, 910-11 (Tex. App.–Waco 1998, pet. ref'd), but has not adopted their interpretation of the statute. *Mahaffey v. State*, 316 S.W.3d 633, 640 n.35 (Tex. Crim. App. 2010).

that make more sense in the context in which it is used in this statute. *See Mahaffey,*

316 S.W.3d at 635 (noting several definitions of "turn" but using the one that applied

in the context of driving when construing a Transportation Code provision). Miriam

Webster defines practical, *inter alia*, as "likely to succeed and reasonable to do or

use."[2]

Practical and practicable have similar meanings; their distinction is primarily

one of usage. Practical is akin to sensible or reasonable, and practicable is closer to

feasible or possible.[3] In that light, either practical or practicable make sense in the

context of the statute.[4] Practical, however, allows the driver a bit more leeway. So

---

[2]http://www.merriam-webster.com/dictionary/practical

[3]http://www.vocabulary.com/articles/chooseyourwords/practical-practicable

[4]With regard to traffic lanes, the Transportation Code appears to use practical and practicable synonymously. *See* TEX. TRANSP. CODE § 545.060(a); TEX. TRANSP. CODE § 545.051(b) ("An operator of a vehicle... shall drive in the right-hand lane available for vehicles, or as close as practicable to the right-hand curb or edge of the roadway..."); TEX. TRANSP. CODE § 545.101(a) ("To make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway."). The Transportation Code uses these terms in other contexts as well. *See* TEX. TRANSP. CODE §131.902(d) ("No other route is possible or practicable."); TEX. TRANSP. CODE § 257.026 (road district annexation permitted if it is "feasible and practical."). TEX. TRANSP. CODE § 203.031(a-1)(4)(B) includes the phrase, "the most practicable extent possible." In that provision, practicable must mean something other than possible, otherwise it would be nonsensical. This example illustrates the importance of considering the context of undefined terms in a statute.

while it may be feasible or possible to drive entirely in one lane, it may not be sensible or reasonable to do so if there is a large pothole or turtle[5] in the lane. Under those circumstances, it might be more reasonable to temporarily leave one's lane to avoid the obstacle. Similarly, while it is possible to remain entirely in one's lane behind a slow-moving bicycle, it may not be reasonable to do so. Under those circumstances, it is reasonable (or practical) to pass, by either leaving the lane entirely or moving partially into another lane until the pass is completed. Sometimes it is reasonable to use both lanes at the same time, straddling the line marker. This may occur in icy conditions or when a road is flooded and the only clear path requires taking up two lanes. The practicality requirement of section 545.060(a) prohibits indiscriminate straddling, aimless weaving, or capricious lane changing, but it allows departure from the lane for sensible reasons.

When subsections (1) and (2) are read together, the statute requires a driver to remain entirely in a single lane as nearly as is sensible or reasonable to do so but, if it is reasonable or sensible to deviate, the operator must do so safely. This requirement of both practicality and safety is consistent with TEX. TRANSP. CODE § 545.058(a), which permits driving on the shoulder if: 1) it is necessary to achieve one of the purposes enumerated in the statute, and 2) it may be done safely. *Lothrop v.*

---

[5]*See Mahaffey*, 316 S.W.3d at 640.

*State*, 372 S.W.3d 187, 190-91 (Tex. Crim. App. 2012). *Lothrop* held, "the offense of illegally driving on an improved shoulder can be proved in one of two ways: either driving on the improved shoulder was not a necessary part of achieving one of the seven approved purposes, or driving on the improved shoulder could not have been done safely." *Id*. That same rationale applies to this statute.

Section 545.060 allows a driver to move out of his lane if it is impractical to remain in a single lane *and* the movement can be performed safely.[6] The Court of Appeals erred by reading the practicality element completely out of the statute. Regardless of whether it was safe for Appellant to leave his lane, it reasonably appeared to be sensible or reasonable for him to remain in his lane without drifting or deviating from it. Therefore, the traffic stop was valid.

**911 call**

The Court of Appeals refused to consider Arliss' report that Appellant's car was "swerving from side to side" in its analysis of the validity of the stop because "there was no evidence presented that would have given [the officer] any reason to

---

[6]This Court need not decide in this case whether the statute proscribes separate offenses or separate manners and means of committing the same offense, only that both subsections must be followed and failure to do either is an offense.

8

attribute credibility to the caller." *Leming*, 454 S.W.3d at 83-84.[7] However, "[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause. . ." *Alabama v. White*, 496 U.S. 325, 330 (1990). And Arliss' report was sufficiently reliable to be considered in the determination of whether the stop of Appellant's car was valid.

This Court has recognized a continuum of reliability of civilian reports to police, from a named "concerned citizen" who reports a crime in the performance of his civic duty at one end of the spectrum to a "snitch" with ulterior motives at the other end. *State v. Duarte*, 389 S.W.3d 349, 355-56 (Tex. Crim. App. 2012). "The citizen-informer is presumed to speak with the voice of honesty and accuracy." *Id.* at 356. This presumption is based, in part, on the fact that he is not associated with the "criminal milieu," as is the snitch. *Id.* But a named informer is also more trustworthy due to the element of accountability; by identifying himself to police, he is subject to liability if his report is false. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). An anonymous tipster, who cannot be held accountable and whose reliability is unknown, does not enjoy this presumption. *Id.*

---

[7]The Court also did not believe the videotape showed the car "swerving from side to side" as Arliss reported, but only "drifting." *Id*. at 84. However, Arliss' observations occurred before the officer arrived. Appellant could have been swerving earlier and moderated to a "drift" when the officer began following and videotaping him.

In *Navarette v. California*, 134 S. Ct. 1683 (2014), Highway Patrol officers received an anonymous 911 call that identified the make, license plate, and location of a truck that had nearly run the caller off the road. *Id*. at 1689. An officer spotted the truck several miles from the reported location and conducted a stop. *Id*. The Supreme Court noted that anonymous tips are normally insufficiently reliable because the veracity of the tipster is unknowable. *Id*. at 1688. However, it held that under the facts in that case, the report had sufficient indicia of reliability. *Id*. at 1688-89. First the report was entitled to greater weight because it included a detailed description of the incident and the caller claimed to be an eyewitness. "[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Navarette*, 134 S. Ct. at 1689, quoting *Illinois v. Gates*, 462 U.S. 213(1983). Second, the officers confirmed the truck's location. *Id*. Third, the report was made immediately after the incident, and contemporaneous reports of criminal activity made under the stress of excitement have been treated as "especially reliable." *Id*. And fourth, use of the 911 system provided further proof of the caller's veracity. *Id*. at 1689-90. Because the system has known identifying and tracing features, "a reasonable officer could conclude that a false tipster would think twice before using such a system." *Id*. at 1690.

10

All the *Navarette* factors are present in this case. Arliss was an eyewitness who followed Appellant until police arrived. He described Appellant's driving while, or shortly after, observing it, and police were able to locate his and Appellant's vehicles based on the description he provided. Like *Navarette*, Arliss used the 911 system, but he also gave police his first name. Under these circumstances a reasonable person could deduce that police had access to his: first name, cell phone number, and the licence plate number of his car. This information is arguably more identifying than just the first and last name of a presumptively reliable "concerned citizen." Arliss' account of Appellant's car "swerving from side to side" was reliable and should be considered in the analysis of the traffic stop.

**Reasonable suspicion of DWI**

Reasonable suspicion exists when, examining the totality of the circumstances, a police officer has specific, articulable facts that, combined with rational inferences from those facts, would lead a reasonable officer to conclude the defendant is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is less demanding than probable cause, and probable cause in turn "falls far short of a preponderance of the evidence." *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009).

Arliss' report and the officer's observations were sufficient to provide

11

reasonable suspicion of driving while intoxicated. Appellant's car was seen swerving from side to side, crossing the lane marker, twice almost hitting the curb, and traveling 13 miles per hour below the speed limit. In *Curtis v. State*, 238 S.W. 376, 380 (Tex. Crim. App. 2007), this Court held that a traffic stop was justified when the car wove in and out of its lane several times late at night. *See also Fox v. State*, 900 S.W.2d 345, 347 (Tex. App–Fort Worth, 1995), pet. dism'd improv. granted, 930 S.W. 2d 607 (Tex. Crim. App. 1996) (weaving within lane and fluctuating speed provided reasonable suspicion for stop).[8]

This Court has relied on an officer's "training and experience" to find that weaving provides reasonable suspicion of driving while intoxicated. *See Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010) ("In light of...Thomas's training and experience, and Foster's aggressive driving, it was rational for Thomas to have inferred that appellant may have been intoxicated."); *Curtis*, 238 S.W.3d at 380 ("...it was part of [officer's] training that a driver's weaving in and out of a lane was a possible indication that the driver was intoxicated."). But specialized knowledge is not required for something so obvious and commonplace. Intoxication is sufficiently

---

[8]The Kansas Supreme Court has examined cases from other jurisdictions and determined that weaving within the lane is alone sufficient to support reasonable suspicion of intoxication. *See State v. Field*, 847 P.2d 1280, 1284-1286 (Kan. 1993), *and cases cited therein*.

prevalent that lay witnesses have long been deemed competent to give an opinion about it. *Innes v. State*, 293 S.W. 821, 822 (Tex. Crim. App. 1926) (opinion on reh'g). It is a matter of common knowledge that intoxication diminishes a person's coordination, balance, and mental agility. *Plouff v. State*, 192 S.W.3d 213, 223-24 (Tex. App. – Houston [14th Dist.] 2006, no pet). And it is universally understood that intoxication affects one's ability to drive a car. Weaving is the hallmark of an intoxicated driver, much like staggering is a classic indicator that a pedestrian is intoxicated. Even a layman who sees frequent, pronounced weaving assumes that the driver is impaired. It does not take specialized training or experience to reasonably suspect driving while intoxicated under these circumstances.[9] This is distinguishable from facts not widely known outside law enforcement or the criminal element, such as balloons being used to carry narcotics. *See Texas v. Brown*, 460 U.S. 730, 742-43 (1983).

Some cases also rely, in part, on the time of day of the traffic stop or its location near bars to find that bad driving allows reasonable suspicion of intoxication.

---

[9]Both sober and intoxicated drivers may speed, fail to use their signals, or drive badly in other ways, but weaving almost always suggests some type of impairment. While it is possible that impairment can be caused by sleepiness or diabetic coma, the possibility of an innocent explanation does not defeat the reasonableness of the suspicion that impairment is due to alcohol or drugs. *See Curtis,* 238 S.W.3d at 378-79 (reiterating Court's rejection of the "as consistent with innocent activity" test.).

*See, e.g., Foster*, 326 S.W.3d at 611, 614 (relying on officer's testimony that "it is common for many people to be impaired in Austin's Sixth Street bar district late at night."); *Curtis*, 238 S.W.3d at 381 (court considered lateness of the hour in its analysis).  While those factors bolster a finding of reasonable suspicion, especially if the driving facts are weak, they need not always be present to reasonably suspect that intoxication is the cause of demonstrably poor driving.

Perhaps the Court of Appeals did not address reasonable suspicion for driving while intoxicated because the State's argument focused on community caretaking and a violation of TEX. TRANSP. CODE § 545.060(a).  But because the State prevailed in the trial court, it was not obligated to raise alternative arguments or, for that matter, any arguments on appeal.  *Volosen v. State*, 277 S.W.3d 77, 80 (Tex. Crim. App. 2007).  It is the responsibility of the Court of Appeals to review an appellant's claims "including any subsidiary issues that might result in upholding the trial court's judgment."  *Id.*  In *State v. Esparza*, 413 S.W.3d 81 (Tex. Crim. App. 2013), the Court reiterated, "[A] first-tier appellate court should reject an appellant's claim of reversible error on direct appeal so long as the trial court correctly rejected it 'on any theory of law applicable to the case,' even if the trial court did not purport to rely on that theory." *Id*. at 85 (citations omitted).

Here, the officer personally observed weaving and slow speed in heavy traffic.

Those facts led him to a subjective concern for Appellant's welfare rather than suspicion of a traffic offense or intoxication. But his subjective legal conclusions about why the stop was justified are irrelevant. *See State v. Elias*, 339. S.W.3d 667, 675 (Tex. Crim. App. 2011) (an officer's subjective reason for stopping a vehicle need not be legitimate as long as the objective facts support the stop). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The validity of a arrest depends on the facts the officer observes, not whether he names the correct offense. *Id.* Otherwise, "An arrest made by a knowledgeable, veteran officer would be valid, whereas an arrest made by a rookie in precisely the same circumstances would not." *Id*.

**Conclusion**

The stop of Appellant's car was valid because the officer observed a traffic violation. Appellant's failure to remain in his lane when it was reasonable to do so violated section 545.060(a). Even if no violation occurred, the stop was justified by reasonable suspicion of DWI based on a reliable 911 report that Appellant was swerving from side to side and the officer's observation of weaving and slow speed. These facts would allow a reasonable person to suspect that Appellant was driving while intoxicated.

## **PRAYER FOR RELIEF**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals set this case for submission, reverse the court of appeals' judgment, and affirm the conviction.

Respectfully submitted,


/s/ Lisa C. McMinn
LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool

this document contains 4402 words.

/s/ Lisa C. McMinn
LISA C. McMINN
State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 20th day of May, 2015, the State's Brief

on the Merits was served electronically on:

Zan Colson Brown
Assistant District Attorney
101 East Methvin, Suite 333
Longview, Texas, 75601
Zan.Brown@co.gregg.tx.us

Clement Dunn
Attorney at Law
140 East Tyler Street, Suite 240
Longview, Texas 75601
clementdunn@aol.com

/s/ Lisa C. McMinn
LISA C. McMINN
State Prosecuting Attorney
